ACCEPTED
07-14-00443C V
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
4/10/2015 4:41:10 PM
Vivian Long, Clerk

NO. 07-14-00443-CV

In The Court of Appeals
for the Seventh District of Texas
at Amarillo

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS
4/10/2015 4:41:10 PM
VIVIAN LONG
CLERK

The Burks Group, Inc., d/b/a Integrated Partners,
*Plaintiff-Appellant*,

V.

Integrated Partners, Inc., Dalrock Transport, L.L.C., John P. Barnett,
David Dreiling, & Allen Thomas Georgi
*Defendants-Appellees*.

On Appeal from the 44th District Court of Dallas County, Texas,
And Transferred from the 5th Court of Appeals

**APPELLANT'S BRIEF**

Appellant Requests Oral Argument

JENSEN & JENSEN
A Professional Corporation
JOHN R. JENSEN
STATE BAR OF TEXAS
 I.D. #10646500
6025 Interstate 20 West
Arlington, Texas  76017
Tel: (817) 478-4940
Fax: (817) 478-4707
Email:  jrj@jensen-law-firm.com
*Attorneys for Plaintiff-Appellant*

# I. IDENTITY OF PARTIES AND COUNSEL

The following is a complete list of the parties to this suit:

1. Plaintiff:          The Burks Group, Inc. d/b/a Integrated Partners

   Attorney:          John R. Jensen
Jensen & Jensen, PC
6025 Interstate 20 West
Arlington, Texas 76017

2. Defendant:     Integrated Partners, Inc.

   Attorney:          Brian T. Cartwright
1710 Westminster
Denton, Texas 76205

3. Defendant:     Dalrock Transport, L.L.C.

   Attorney:          Brian T. Cartwright
1710 Westminster
Denton, Texas 76205

4. Defendant:     John P. Barnett

   Attorney:          Brian T. Cartwright
1710 Westminster
Denton, Texas 76205

5. Defendant:     David Dreiling

   Attorney:          Pro Se
1408 Melody Ln.
Carrollton, Texas 75006

6. Defendant:     Allen Thomas Georgi

   Attorney:          Pro Se
2701 North Grapevine Mills #714
Grapevine, Texas 76051

## II. TABLE OF CONTENTS

I.  PARTIES TO SUIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

II.  TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

III.  INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iv

IV.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

V.  STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . .  2

VI.  ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

VII.  STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

VIII.  SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . .  10

IX.  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

1.  THE TRIAL COURT ERRED BY REFORMING THE COVENANT NOT TO COMPETE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

A.  THE TRIAL COURT ERRED BY REFORMING THE COVENANT NOT TO COMPETE AT THE HEARING ON PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

B.  THE TRIAL COURT ERRED BY REFORMING THE COVENANT NOT TO COMPETE TO CONFORM TO THE CONDUCT OF THE DEFENDANT/PROMISOR, THEREBY RENDERING IT MEANINGLESS . . . . . . . . . . . . . . . . . . . . . . . .  16

2.  THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO AND MOTION FOR NEW TRIAL IN THAT THE JURY FINDING ON THE ISSUE OF TORTIOUS INTERFERENCE WITH A CONTRACT WAS AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

X.   PRAYER  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

XI.   CERTIFICATE OF COMPLIANCE  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

XII.  CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

XI.   APPENDIX        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

## III. INDEX OF AUTHORITIES

**Case Law:**

*Aguirre v. Vasquez*, 225 S.W.3d 744 (Tex. App. – Houston [14th Dist.] 2007, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*AKB Hendrick, LP v. Musgrave Enters.*, 380 S.W.3d 221 (Tex. App. – Dallas 2012, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787 (Tex. App. – Houston [1st Dist.] 2001, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Butnaru v. Ford Motor Co.*, 84 S.W.3d 198 (Tex. 2002) . . . . . . . . . . . . . . . 14, 19

*Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230 (Tex. App. – Houston [1st Dist.] 2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*EMS USA, Inc. v. Shary*, 309 S.W.3d 653 (Tex. App. – Houston [14th Dist.] 2010, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693 (Tex. App. – Houston [14th Dist] 2004, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*G. C. Murphy Company v. Lack*, 404 S.W.2d 853 (Tex. Civ. App. – Corpus Christi 1969, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Gray Wireline Serv., Inc. v. Cavanna*, 374 S.W.3d 464 (Tex. App. – Waco 2011, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hennigan v. I.P. Petroleum Company, Inc.,* 858 S.W.2d 371 (Tex. 1993) . . 20

*Henshaw v. Texas Natural Resources Foundation*, 147 Tex. 436, 216 S.W.2d 566 (Tex. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*John Paul Mitchell Sys. v. Randalls Food Mkts., Inc.*, 17 S.W.3d 721 (Tex. App. – Austin 2000, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Mendoza v. Fidelity and Guaranty Insurance Underwriter's Inc.*, 606 S.W.2d 692 (Tex. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Prudential Ins. v. Financial Rev. Servs.*, 29 S.W.3d 74 (Tex. 2000)  . . . . . . . . 19

*Seelback v. Clubb*, 7 S.W.3d 749 (Tex. App. – Texarkana 1999, pet. denied) . . . 19

*Sentinel Integrity Solutions, Inc. v. Mistras Group, Inc.*, 414 S.W.3d 911 (Tex. App. – Houston [1st Dist.] 2013, reh'g overruled (Dec. 19, 2013), review denied (Oct. 3, 2014)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

 *Tippett v. Hart,* 497 S.W.2d 606 (Tex. App. – Amarillo 1973, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Rules and Statutes:**

Tex. Bus. & Com. Code § 15.50  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Tex. Bus. & Com. Code § 15.51  . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 16, 17

Tex. Bus. & Com. Code § 15.51(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Tex. Bus. & Com. Code § 15.51(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Tex. Bus. & Com. Code § 15.52  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# IV. STATEMENT OF THE CASE

Defendants, John P. Barnett and Integrated Partners, Inc., sold their optical courier business to The Burks Group, Inc. on August 21, 2009. Just over three years later, Barnett reassumed complete operational control of the very same optical courier business without paying one penny.

This case was brought by The Burks Group, Inc. against John P. Barnett, Dalrock Transport, L.L.C., and Integrated Partners, Inc., alleging breach of contract, breach of the covenant not to compete, and tortious interference with contractual relationships.

The trial court reformed the Covenant Not to Compete to conform with the behavior of the promisor, John P. Barnett, at the hearing on Plaintiff's Application for Temporary Injunction, which was brought to enforce the Covenant Not to Compete.

A jury trial on the tortious interference with contractual relationships cause of action resulted in a final judgment entered on the jury verdict, which was for the defendants and denied Plaintiff's requested relief.

This appeal is from both the court's order denying the temporary injunction and reforming the covenant not to compete, and from the judgment on the tort claim as against the great weight and preponderance of the evidence.

1

## V. STATEMENT REGARDING ORAL ARGUMENT

The issues on appeal raise many questions relating to the current status of the law in the State of Texas. Oral argument may prove helpful in answering the questions raised in this lawsuit.

## VI. ISSUES PRESENTED

1. The Trial Court Erred by Reforming the Covenant Not to Compete at the Hearing on Plaintiff's Application for Temporary Injunction.

2. The Trial Court Erred by Reforming the Covenant Not to Compete to Conform to the Conduct of the Defendant/Promisor, thereby rendering it meaningless.

3. The Trial Court Erred in Denying Plaintiff's Motion for Judgment Non Obstante Veredicto and Motion for New Trial in that the Jury Finding on the Issue of Tortious Interference with a Contract was Against the Great Weight and Preponderance of the Evidence.

## VII. STATEMENT OF FACTS

On August 21, 2009, The Burks Group, Inc. purchased the business owned and operated by Integrated Partners, Inc., a sophisticated courier service that delivered optical products from laboratories to dispensaries of optical products, such as eye doctors. (RR, Volume 13, Exhibit P-1). The purchase price of $750,000.00 was paid in exchange for substantially all of the tangible and intangible assets of Integrated Partners, Inc., including: (1) the trade name "*Integrated Partners*"; (2) good will; (3) customer contracts; (4) customer list; (5) telephone number; and (6) more, all as set forth in the contract of purchase. (RR, Volume 6, Page 29, Line 4

through Page 30, Line 4). The complete terms of the parties' arrangement are contained in their Asset Purchase Agreement ("APA"). (RR, Volume 13, Exhibit P-1). As part of the APA, Integrated Partners, Inc. sold existing courier contracts for the delivery of optical products it had with Hoya Vision Care, Legends 4.0 Optical Lab, and Southwest Lens Optical Lab. (RR, Volume 6, Page 43, Line 22 through Page 44, Line 25; and Volume 13, Exhibit P-1, Exhibit H). Each courier contract continued on a month-to-month basis after the expiration of the initial term in accordance with the provision contained within each contract. (RR, Volume 13, Exhibits P-3, P-4, and P-5). After August 21, 2009, The Burks Group, Inc. entered into separate individual contracts with David Dreiling, Allen Thomas Georgi, Gerry Williams, Christopher R. Gonzalez, Kuffour Donkor-Boateng, Suzane A. Thomaz, Rhenda Gonzalez, Steven J. Green, and Luis Alejandro Fernandez to act as courier drivers for the business of Integrated Partners. (RR, Volume 6, Page 73, Line 2 through Line 25; and Volume 13, Exhibits P-7, P-8, and P-9). As the APA required Barnett to dissolve the corporate entity or change the name within six months (which was never done), the Burks Group, Inc. operated the business known as Integrated Partners for the next three years under the assumed name "*Integrated Partners.*" (RR, Volume 13, Exhibit P-1, Paragraph XXVII; and Volume 2, Page 65, Line 11 through Line 17).

3

The APA in paragraph XXVIII and *"Exhibit M"* contained a Covenant Not To Compete specifically for Barnett, which contained: (1) a stipulation as to the appropriateness of injunctive relief; (2) a provision for the extension of the three-year term in the event of Barnett's violation by "tolling" the restriction period; and (3) an award of attorney's fees in the event of a dispute. (RR, Volume 13, Exhibit P-1, Exhibit M). Barnett agreed individually to restrict his business activities for a period of three years within the State of Texas by: (1) not engaging in the courier or "hot shot" business as an investor or employee; (2) by not taking employees - including its independent contractors - away from The Burks Group, Inc.; (3) by not soliciting The Burks Group, Inc.'s customers; and (4) by not tampering with suppliers of The Burks Group, Inc. (RR, Volume 13, Exhibit P-1, Exhibit M).

After selling his business to The Burks Group, Inc., Barnett took some classes and seminars in the stock market and real estate investing, and engaged in those activities until he ran out of money. (RR, Volume 9, Page 24, Line 18 through Page 25, Line 18). Barnett's employment history after selling his business started with a roofing company called *Healy*, where he worked from August 2010 to May 2011. (RR, Volume 9, Page 26, Line 16 through Line 24). Barnett left *Healy* to go to work for *Town and Country Roofing Company*. (RR, Volume 9, Page Line 2 through Line 10). In response to the question, "Do you have any other employment, initially his answer was "no". (RR, Volume 9, Page 27, Line 24 through Page 28, Line 3). Later,

4

Barnett conceded to working for *Celerity Logistics*. (RR, Volume 9, Page 47, Line 7 through Line 18).

In October, 2010, just over a year after the APA was entered, Barnett took employment with Celerity Logistics. (RR, Volume 9, Page 47, Line 13 through Line 15). Celerity Logistics was a courier and "hot shot" business. (RR, Volume 12, Exhibit B, Page 4, Line 23 through Page 6, Line 8; and Page 17, Line 22 through Page 21, Line 24). Barnett worked for Celerity Logistics until August 21, 2012, or exactly the same day Barnett believed was the last day of the Covenant Not to Compete. (RR, Volume 9, Page 47, Line 7 through Line 18).

The Confidential Business Review, upon which Plaintiff relied in the asset purchase, listed four major competitors. (RR, Volume 13, Exhibit P-2, Page 5). The first, in order of perceived threat, was *Marquis Messenger and Edge Logistics*, which are the same company. (RR, Volume 6, Page 36, Line 20 through Line 24). *Marquis Messenger and Edge Logistics* later became a company by the name of *Tex Express.* *Tex Express* was then purchased by *Beavex*. (RR, Volume 6, Page 37, Line 1 through Line 3). *Beavex* is the same company that purchased *Celerity Logistics*. (RR, Volume 6, Page 37, Line 4 through Line 7).

Stephen Edward Sullivan, an employee of Beavex (company that acquired *Celerity Logistics* in 2012), was previously employed at Celerity Logistics as Senior VP of sales, in charge of marketing, sales, budget, managing sales team and bringing

on board new revenue. (RR, Volume 12, Plaintiff's Exhibit B, Page 4, Line 23 through Page 7, Line 14). Sullivan knew Barnett worked at Celerity Logistics, beginning in October, 2010, as a salesman. (RR, Volume 12, Plaintiff's Exhibit B, Page 9, Line 18 through Page 10, Line 2). Sullivan acknowledged Celerity Logistics scheduled and routed deliveries as a courier. (RR, Volume 12, Page 18, Line 4 through Line 22). Additionally, Celerity Logistics, according to Sullivan, provided "hot shot" services. (RR, Volume 12, Page 20, Line 7 through Page 21, Line 24).

On August 22, 2012, the day after his termination as an employee of Celerity Logistics, Barnett through his daughter Peyton Barnett filed an assumed name certificate in Denton County, Texas to operate a business under the name *"Dalrock Transport."* (RR, Volume 9, Page 74, Line 12 through Line 20; and Volume 13, Exhibit P-10).

Barnett knew that in order for his venture to succeed he would need to take back the three specifically named optical companies whose contracts he had sold to The Burks Group, Inc. in the APA. (RR, Volume 2, Page 70, Line 20 through Page 71, Line 14; Page 76, Line 5 through Line 10; and Volume 6, Page 19, Line 3 through Line 22). Barnett immediately initiated a series of clandestine meetings with customers and drivers of The Burks Group Inc. to induce them into breaching their respective contracts with The Burks Group Inc. and to form contracts with Dalrock Transport. (RR, Volume 6, Page 80, Line 6 through Line 20; Page 82, Line 7 through

6

Line 11; Volume 7, Page 188, Line 13 through Line 23; Page 190, Line 19 through Line 22; and Page 192, Line 10 through Line 14). Specifically, Barnett willfully and intentionally induced customers, Essilor Laboratories of America, Inc. and its affiliates, Legends 4.0 Optical Lab, and lastly Hoya Vision Care, who were all under written contract with The Burks Group, Inc. into breaching those contracts. (RR, Volume 13, Exhibit P-12; Volume 7, Page 37, Line 6 through Line 11; Page 41, Line 19 through Page 42, Line 7; Page 23, Line 6 through Page 24, Line 12; and Page 42, Line 8 through Line 17).

Barnett, through Dalrock Transport, started doing business with Legends 4.0 Optical Lab as early as October 1, 2012 by utilizing the services of his former employer Celerity Logistics to make deliveries, as he had yet to secure drivers for Dalrock Transport. (RR, Volume 6, Page 123, Line 25 through Page 124, Line 16). Barnett operated as Dalrock Transport until Dalrock Transport, L.L.C. came into existence on October 11, 2012. (RR, Volume 6, Page 14, Line 13 through Page 15, Line 17).

On October 22, 2012, the entire delivery operation previously purchased by The Burks Group, Inc. was taken over by John P. Barnett and Dalrock Transport, L.L.C., including the customers then under written contract with The Burks Group, Inc. and the drivers also under written contract with The Burks Group, Inc. (RR, Volume 6, Page 92, Line 13 through Line 16; and Page 93, Line 3 through Line 7).

7

The entire business was taken over and it was not discovered by the principals of Plaintiff until the take-over of the business had already occurred. (RR, Volume 7, Page 38, Line 17 through Line 24; and Page 39, Line 16 through Line 20).

While the three-year term of the Covenant Not to Compete appeared on its face to have expired at the time of Barnett's takeover, in fact, Barnett began violating the Covenant Not to Compete as early as October, 2010, when he began working for Celerity Logistics, a courier service, with offices in 700 cities nationally, and every major city in Texas. (RR, Volume 9, Page 50, Line 23 through Line 25; and Volume 12, Exhibit B, Page 17, Line 16 through Page 21, Line 24). This violation was not only actionable, but it extended the expiration date of the Covenant Not to Compete for the almost two year period during which Barnett was employed by the courier service. (RR, Volume 13, Exhibit P-1, Exhibit M).

The Burks Group, Inc. sought injunctive relief restricting the activities of Barnett and his newly formed entity, Dalrock Transport, L.L.C. in the place and manner set out in the Covenant Not to Compete for a time period that is the same number of days during which Barnett conducted activities contrary to the terms of the Covenant Not to Compete, and further requested Barnett be enjoined, along with Dalrock Transport, L.L.C., from engaging in the courier business for such a time as would equal the number of days the three year covenant was tolled during Barnett's employment with Celerity Logistics, Inc. and operation of Dalrock Transport, L.L.C.

8

(CR 9, Page 22). The trial court had other notions and not only denied the temporary injunction, but reformed the Covenant Not to Compete in the face of Barnett admitting to using Celerity Logistics to deliver optical product after he was fired by Celerity Logistics and before he ultimately took over the entire operations of The Burks Group, Inc. (RR, Volume 2, Page 76, Line 16 through Page 78, Line 4; and CR 11, Page 31).

At trial, beginning March 17, 2014, Barnett testified he was acting individually and on behalf of Dalrock Transport, L.L.C. and admitted to having interfered with the delivery contracts with optical laboratories for the delivery and distribution of product as part of the network of Integrated Partners, and his interference caused the Plaintiff's loss of the business to him. (RR, Volume 6, Page 19, Line 3 through Line 22; Page 74, Line 4 through Line 11; Page 75, Line 10 through Line 20; Page 121, Line 13 through Line 18; Page 53, Line 3 through Line 25; Page 80, Line 6 through Line 20; Page 82, Line 7 through Line 11; Page 83, Line 1 through Line 12; Page 86, Line 20 through Page 87, Line 18; and Volume 13, Exhibit P-12). Barnett testified that through his company Dalrock Transport he took over the entire business he had sold three years before including the drivers, and the only difference after October 22, 2012 being that the optical companies sent their checks to him and not The Burks Group, Inc. (RR, Volume 6, Page 91, Line 7 through Page 93, Line 7). Against the weight of Defendant Barnett's own testimony,

9

the jury found there was no tortious interference with a contract. (CR 14, Page 76).

## VIII. SUMMARY OF THE ARGUMENT

The trial court erred in reforming the Covenant Not to Compete at the hearing on Plaintiff's application for temporary injunction, as reformation is a final remedy to be granted after a final hearing on the merits, or at summary judgment. The court should have maintained its focus on the issue of whether or not to grant the application for temporary injunction, and not stray from the purpose of the hearing. Reformation at such an early stage in the litigation is outcome determinative and completely destroyed Plaintiff's cause of action for breach of the Covenant Not to Compete.

Additionally, the trial court erred in reforming the Covenant Not to Compete to conform to the Defendant's conduct, as the promisor openly admitted to violating the Covenant by taking a job with a competing business only one year into the three year prohibition. The injunction sought would have maintained the status quo and allowed Plaintiff to recover his damages for the breach of the Covenant at final trial. Instead the Covenant was reformed to render it meaningless and gave Defendant the green light to take back what he had sold just three years earlier.

Furthermore, the trial court erred in failing to grant a Judgment Non Obstante Veredicto and in denying Plaintiff's Motion for New Trial, as Defendant openly admitted in court to tortiously interfering with Plaintiff's contractual relationships.

10

Such statements rose above the level of quasi-admissions, and became true judicial admissions. Any jury verdict finding that Defendant had not tortiously interfered with the contractual relationships of Plaintiff would have been against the great weight and preponderance of the evidence.

## IX. ARGUMENT

### 1. THE TRIAL COURT ERRED IN REFORMING THE COVENANT NOT TO COMPETE.

In an attempt to salvage what he could of his business, Plaintiff filed its application for temporary and permanent injunctive relief. With a temporary injunction in place, Plaintiff could continue to build his existing customer retention and prevent the annihilation of his business that ultimately occurred.

While the basic three-year term of the Covenant Not to Compete had expired at that time, Defendant's employment by competitor Celerity Logistics triggered the "tolling" provisions of the Covenant Not to Compete for a period of two years beyond the term.

The trial court denied Plaintiff's request for injunctive relief, and while Plaintiff did not request the statutory relief of reformation, the trial court's order reformed the Covenant Not to Compete in a manner that effectively restricted none of Defendant's activities in its hostile and meditated takeover of the business that the Defendant sold to Plaintiff three years previously and deprived Plaintiff of a jury

11

trial on the issue of whether Defendant violated the Covenant Not to Compete and

should pay damages to Plaintiff.

The Court's order reformed the scope of the activity of the Covenant Not to

Compete from its industry-wide exclusion to:

> *"... prohibit Defendant JOHN BARNETT between August 21, 2009 and August 21, 2012, being employed by any person, venture, partnership or other entity that is a courier or "hot shot" business providing services only to customers in the optical industry that were actual customers of INTEGRATED PARTNERS, INC. between August 21, 2009 and August 21, 2012."* (CR 11, Page 31)

To prevail on a cause of action for breach of a Covenant Not to Compete, the

Plaintiff must prove the following:

1. The parties entered into an enforceable agreement, separate from a covenant not to compete;

2. The covenant not to compete was ancillary to or part of the agreement at the time the agreement was made;

3. The covenant's limitations were reasonable as to each of the following:

> a. time
> b. geographic area
> c. scope of activity to be restrained

4. The covenant's limitations did not impose a greater restraint than was necessary to protect the promisee's business interest;

5. The promisor breached the covenant not to compete. Tex. Bus. & Com. Code §§ 15.50-15.52.

12

However, if the primary purpose of the agreement to which the covenant is ancillary is different than to render personal services, the promisor has the burden of establishing that the covenant does not meet those criteria. Tex. Bus. Com. Code § 15.51(b).

The enforceability of a covenant not to compete is a question of law. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

Tex. Bus. & Com. Code § 15.50 and § 15.51 only govern final remedies and do not preempt common law relating to temporary injunctions. *EMSL Analytical, Inc. v. Younker*, 154 S.W.3d 693, 695 (Tex. App. – Houston [14th Dist] 2004, no pet.).

To obtain a temporary injunction, the party seeking the temporary injunction must plead and prove: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury for which there is no adequate legal remedy. *EMSL Analytical*, at 696; *EMS USA, Inc. v. Shary*, 309 S.W.3d 653, 657 (Tex. App. – Houston [14th Dist.] 2010, no pet.)

To obtain a permanent injunction, the party seeking the injunction must show that the covenant meets the criteria for enforceability in Tex. Bus. & Com. Code § 15.50. *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 795 (Tex. App. – Houston [1st Dist.] 2001, no pet.).

13

Injunctive relief is only available to the promisee. Tex. Bus. & Com. Code § 15.51.

If the court reforms the covenant to make it reasonable, the promisee cannot recover damages for any breach that occurred before the reformation. Tex. Bus. & Com. Code § 15.51(c).

**A. THE TRIAL COURT ERRED BY REFORMING THE COVENANT NOT TO COMPETE AT THE HEARING ON PLAINTIFF'S APPLICATION FOR TEMPORARY INJUNCTION.**

The purpose of a temporary injunction is to preserve the status quo of the litigation's subject matter pending trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App. – Houston [1st Dist.] 2003, no pet.). However, reformation under Tex. Bus. Com. Code § 15.51 is a remedy to be granted at a final hearing, whether on the merits or by summary judgment, and not as interim relief. *Cardinal Health*, at 238-39; *Sentinel Integrity Solutions, Inc. v. Mistras Group, Inc.*, 414 S.W.3d 911, 920 (Tex. App. – Houston [1st Dist.] 2013, reh'g overruled (Dec. 19, 2013), review denied (Oct. 3, 2014); *Gray Wireline Serv., Inc. v. Cavanna*, 374 S.W.3d 464, 470 (Tex. App. – Waco 2011, no pet.).

In *Cardinal Health Staffing Network, Inc. v. Bowen*, Cardinal Health sued Bowen to enforce a covenant not to compete and for tortious interference, as well as various other causes of action. *Cardinal Health*, at 234. The relevant issue before

14

the court was whether or not the procedures of Tex. Bus. & Com. Code § 15.51 preempted the common law requirements for temporary injunction hearings. *Id*. at 237. The court concluded that the Legislature intended for § 15.51(a) to govern only final remedies, as it uses the terms "award" and "damages". *Id*. at 238. The court reasoned that § 15.51(b) must therefore logically follow final adjudications and not apply to the pursuit of preliminary relief. *Id*. at 238-39.

In the present case, the Covenant Not to Compete was reformed following the trial court's disjointed review of the evidence at a temporary hearing requesting injunctive relief. The trial court's attempted reformation of the Covenant Not To Compete did not occur following a final hearing on the merits, a hearing dedicated solely to that purpose, or even at a hearing on a motion for summary judgment. The only issue before the court at hearing was whether or not a temporary injunction should be issued to prevent Defendant from engaging in the activities prohibited by the Covenant Not to Compete, thereby preserving the status quo. However, the trial court committed a fundamental error and decided an issue that was not yet before it, effectively obliterating Plaintiff's cause of action for breach of the Covenant Not to Compete.

The denial of the application for temporary injunction should have opened the door to a request for reformation, instead of the court's reformation closing the door to the grant of a temporary injunction. Such an overbearing issue requires supportive

15

pleading, notice, briefing, and hearing. It cannot be relegated to a sideshow at a hearing on an application for temporary injunction, for its disposition is most certainly outcome determinative. By the time of trial, Plaintiff's business was completely destroyed and all the customers and drivers were doing business with Defendant. The grant of a temporary injunction followed by the grant of a permanent injunction at the end of trial could have prevented this harm and allowed Plaintiff the time he needed to protect his business.

Furthermore, throughout this entire lawsuit, no request has been made by the promisee to reform the covenant not to compete, which was traditionally required in Texas to protect the interest of the promisee. As reformed by the trial court, only one party received any protection, and it is not the one who has historically been entitled to it.

Therefore, the trial court erred in reforming the Covenant Not to Compete at the hearing on the plaintiff's application for temporary injunction.

**B.   THE TRIAL COURT ERRED BY REFORMING THE COVENANT NOT TO COMPETE TO CONFORM TO THE CONDUCT OF THE DEFENDANT/PROMISOR, THEREBY RENDERING IT MEANINGLESS.**

Tex. Bus. & Com. Code, § 15.51 allows a trial court to reform a covenant not to compete:

> *"... to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the*

16

*promisee and enforce the covenant as reformed, except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief."* Tex. Bus. & Com. Code § 15.51.

As reformed, John Barnett could *not* work for a company that serviced *only* the customers of Integrated Partners, Inc. (the Defendant) between August 21, 2009 and August 21, 2012. However, Integrated Partners, Inc. sold its customer list to The Burks Group, Inc. d/b/a Integrated Partners as part of the Asset Purchase Agreement. Effective on the Closing of the Asset Purchase Agreement, there were no customers of Integrated Partners, Inc. Therefore, as reformed, Defendant could have gone to work for anybody, including a company that only serviced customers in the optical industry, and even if those customers were also customers of Plaintiff.

The trial court interpreted and reformed the Covenant Not to Compete completely out of existence, rendered it impotent in protecting Plaintiff's interests, and declared open season on Plaintiff's business, ensuring Defendant could keep both his business and the Plaintiff's $750,000.00 purchase price

Furthermore, the trial court's reformation meant that Plaintiff could not recover for damages based on the breach of the Covenant Not to Compete, as the trial court's order excluded from the realm of possibility any practical set of circumstances under which Defendant could have violated the Covenant Not to Compete. Although Defendant readily admitted soliciting and inducing the customers of Plaintiff to terminate their relationship with Plaintiff, the result of the

17

trial court's reformation was that Defendant had committed no foul, unless Plaintiff could prove his case for tortious interference, effectively rendering summary judgment on Plaintiff's cause of action for the violation of the Covenant Not to Compete without the inconvenience to the court of the summary judgment procedure.

Therefore, the court erred in reforming the Covenant Not to Compete to conform to the conduct of the defendant/promisor.

**2.    THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION FOR JUDGMENT NON OBSTANTE VEREDICTO AND MOTION FOR NEW TRIAL IN THAT THE JURY FINDING ON THE ISSUE OF TORTIOUS INTERFERENCE WITH A CONTRACT WAS AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE.**

Not only did Barnett make his own determination that he was not bound by the Covenant Not to Compete upon its literal expiration, but he also diagnosed himself as being immune from the consequences of intentionally interfering with Plaintiff's business activities.  As though to say, "*so what? sue me*," Barnett readily admitted to:

1.    interfering with the delivery contracts with optical laboratories;

2.    causing the Plaintiff's loss of these delivery contracts;

3.    interfering with the courier driver contracts; and

4.    using Dalrock Transport to take over the entire business he had sold to Plaintiff.  (RR, Volume 6, Page 91, Line 7 through Page 93, Line 7).

18

The jury finding that Barnett had not committed tortious interference was against the overwhelming weight of the evidence. Plaintiff proved liability and damages through Barnett.

To prevail on a claim for tortious interference with contractual relationships, the Plaintiff must prove:

1. The plaintiff had a valid contact;

2. The defendant willfully and intentionally interfered with the contract;

3. The interference proximately caused the plaintiff's injury; and

4. The plaintiff incurred actual damages or loss. *Butnaru v. Ford Motor Co*., 84 S.W.3d 198, 207 (Tex. 2002); *Prudential Ins. v. Financial Rev. Servs*., 29 S.W.3d 74, 77 (Tex. 2000).

A plaintiff can prove tortious interference by establishing the defendant intentionally induced or caused a third party to breach its contract with the plaintiff. *John Paul Mitchell Sys. v. Randalls Food Mkts., Inc*., 17 S.W.3d 721, 730-31 (Tex. App. – Austin 2000, pet. denied). Furthermore, a plaintiff may establish interference by showing that the defendant prevented performance by making the performance impossible or more burdensome, difficult, or expensive. *See Tippett v. Hart,* 497 S.W.2d 606, 610 (Tex. App. – Amarillo 1973, writ ref'd n.r.e.); *AKB Hendrick, LP v. Musgrave Enters*., 380 S.W.3d 221, 236 (Tex. App. – Dallas 2012, no pet.); *Seelback v. Clubb*, 7 S.W.3d 749, 757 (Tex. App. – Texarkana 1999, pet. denied).

19

Ordinarily, a party's testimonial declarations that are contrary to his position are quasi-admissions. *Hennigan v. I.P. Petroleum Company, Inc.*, 858 S.W.2d 371, 372 (Tex. 1993). But, in this case, as a matter of public policy, Barnett's testimonial quasi-admissions should be treated as a true judicial admission in that:

1.     Barnett's admissions were made during the course of a judicial proceeding;

2.     Barnett's admissions are contrary to an essential fact embraced in his defense;

3.     Barnett's admissions are deliberate, clear, and unequivocal (the hypothesis of mere mistake or slip of the tongue must be eliminated);

4.     the giving of conclusive effect to Barnett's admissions  will be consistent with the public policy upon which the rule is based; and

5.     Barnett's admissions are not also destructive of the Plaintiff's theory of recovery.

*Aguirre v. Vasquez*, 225 S.W.3d 744, 756 (Tex. App. – Houston [14th Dist.] 2007 no pet.).

Barnett has effectively sworn his defense right out of court by clear, unequivocal testimony. *Mendoza v. Fidelity and Guaranty Insurance Underwriter's Inc.*, 606 S.W.2d 692, 694 (Tex. 1980).

Barnett's testimonial evidence was clear and uncontradicted.

Specifically:

1.     There were three written Contracts with the optical companies each containing a month to month renewal clause and a written notice of termination clause. (RR, Exhibits P-3, P-4, and P-5 and Volume 6,

20

Page 53, Line 3 through Line 25);

2.     As a matter of law, each optical company contract was renewed on a month to month basis that started on the first of the month and ended on the last day of the month beginning at the expiration of the initial term of each contract.  The courts do not favor forfeitures and unless compelled to do so by language that will admit no other construction, forfeiture will not be enforced.  *G. C. Murphy Company v. Lack*, 404 S.W.2d 853, 858 (Tex. Civ. App. – Corpus Christi 1969, writ ref'd n.r.e.); *Henshaw v. Texas Natural Resources Foundation*, 147 Tex. 436, 444, 216 S.W.2d 566, 570 (Tex. 1949);

3.     It was undisputed that not one of the three contracts (RR, Exhibit P-3, P-4, and P-5) were terminated, and certainly not by written notice as required by the provision in each contract.  Accordingly, each optical company contract with the Plaintiff was in effect during the period October 1, 2012 through October 31, 2012;

4.     Barnett knew that Plaintiff was making pickups and deliveries pursuant to the three optical company contracts October 1, 2012 through October 19, 2012.  (RR, Volume 6, Page 59, Line 3 through Page 60, Line 3);

5.     And Barnett knew the deliveries being made by Plaintiff were being made pursuant to a written contract, and not an oral contract. (RR, Volume 6, Page 63, Line 15 through Line 20);

6.     Defendant Barnett convinced the three optical companies to quit using Plaintiff after October 19, 2012 and thereafter to use Dalrock Transport, L.L.C. starting October 21, 2012.  (RR, Volume 6, Page 80, Line 6 through Page 88, Line 24);

7.     By way of summary of the entire take over event, Defendant Barnett testified that Dalrock Transport used the same price structure, the same physical complex where the drivers collected optical product for delivery, the same drivers, each driver drove the same route, the same delivery lock boxes, and agreed that the **ONLY** (emphasis added) changes between October 19, 2012 and October 21, 2012 was that after October 22, 2012 the optical companies sent their checks to Dalrock Transport, L.L.C. rather than Plaintiff.  (RR, Volume 6, Page 91, Line

21

7 through Page 93, Line 7);

8.    Defendant Barnett testified that the only changes he brought to the optical companies by switching to Dalrock Transport, L.L.C. from Plaintiff was he personally contacted the upper level executives he had known for many years, became reacquainted with them, and took them to lunch.  Otherwise, Dalrock Transport was the very same company in every respect as Plaintiff had.  (RR, Volume 6, Page 95, Line 7 through Line 23); and

9.    Defendant Barnett testified that the value of the company was $750,000.00 at the time he took over the company.  (RR, Volume 6, Page 25, Line 8 through Page 27, Line 2).

From the testimony of Barnett himself coupled with the contract evidence, Plaintiff was able to conclusively establish every element of the cause of action and Plaintiff's damages.  Accordingly, the jury finding to Question 1 was against the great weight and preponderance of the evidence.

## X. PRAYER

Appellant prays that this Court reverse and render judgment on the claim for tortious interference with the contracts in the amount of damages equal to $750,000.00, and remand the case for trial on the issue of lost profits, attorney fees, and injunctive relief.

Alternatively, Appellant request that this Court reverse the trial court's order denying the temporary injunction and reforming the covenant not to compete, and remand with instructions to enter an injunction preventing Defendant from engaging

22

in the prohibited activity, and for trial under the Covenant Not to Compete as it existed prior to reformation.

Finally, and in the alternative, Appellant respectfully prays reversal and remand of the entire case for retrial of both causes of action, and for such further relief, in law or in equity, as the Court deems Appellant justly entitled.

## XI. CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the foregoing document contains 5127 words, and is in compliance with Texas Rule of Appellate Procedure 9.4(i)(2)(B).

_____
John R. Jensen

## XII. CERTIFICATE OF SERVICE

Pursuant to Texas Rule of Appellate Procedure 9.5, I certify that a copy of the foregoing Appellant's Brief was served on April 10, 2015 on the following parties in the following manner:

1. Defendants Integrated Partners, Inc., Dalrock Transport, L.L.C., and John P. Barnett were served through their attorney of record Brian T. Cartwright through the electronic filing manager.

2. Pro Se Defendant, David Dreiling, was served by first class mail to 1408 Melody Ln., Carrolton, Texas 75006.

3. Pro Se Defendant, Allen Thomas Georgi, was served by first class mail to 2701 North Grapevine Mills #714, Grapevine, Texas 76051.

_____
John R. Jensen

# XIII. APPENDIX

| Document Name | Doc. & Page No. | Tab# |
|---|---|---|
| Order on Plaintiff's Application For Temporary And Permanent Injunction | CR 11 Pg. 31 | 1 |
| Charge of Court | CR 14 Pg. 76 | 2 |
| Order Denying Plaintiff's Motion for JNOV | CR 17 Pg. 114 | 3 |
| Judgment and Charge of Court | CR 18 Pg. 116 | 4 |
| Order Denying Plaintiff's Motion for New Trial | CR 21 Pg. 256 | 5 |
| Subchapter E, Chapter 15, Title 2, Texas Business & Commerce Code | N/A | 6 |
| Asset Purchase Agreement | RR Vol 13 P-1 | 7 |
| Contracts | RR Vol 13 P-1 Ex. H | 8 |
| Covenant Not to Compete | RR Vol 13 P-1 Ex. M | 9 |

# TAB 1

CAUSE NO. DC 12-14499

| | | |
|---|---|---|
| THE BURKS GROUP, INC., D/B/A INTEGRATED PARTNERS, | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| v. | § § | |
| INTEGRATED PARTNERS, INC., DALROCK TRANSPORT, L.L.C., JOHN P. BARNETT, DAVID DRIELING, ALLEN THOMAS GEORGI, GERRY WILLIAMS, CHRISTOPHER R. GONZALEZ, KUFFOUR DONKO-BOATENG, SUZANE A. THOMAZ, RHENDA GONZALEZ, STEVEN GREEN, AND LUIS ALEJANDRO FERNANDEZ | § § § § § § § § § § § | B-44TH JUDICIAL DISTRICT |
| Defendants. | § | OF DALLAS COUNTY, TEXAS |

## ORDER ON PLAINTIFF'S APPLICATION FOR TEMPORARY AND PERMANENT INJUNCTION

On this the 10th day of July, 2013, came on for consideration Plaintiff's Application for Temporary Injunction. Plaintiff THE BURKS GROUP, INC. D/B/A INTEGRATED PARTNERS ("Plaintiff") appeared through its representative, Brian Burks and its counsel, John Jensen. Defendant JOHN P. BARNETT, individually, and Defendants DALROCK TRANSPORT, L.L.C., and INTEGRATED PARTNERS, INC., appeared through their representative, John P. Barnett, and their counsel, Brian T. Cartwright.

After considering the evidence, arguments of counsel, and authorities, the Court finds that the Plaintiff's Application for Temporary Injunction should be DENIED.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Plaintiff's Application for Temporary Injunction is DENIED in all respects.

31

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Covenant Not to Compete signed by Defendant JOHN P. BARNETT, individually, is unreasonable in geographical area and scope of activity, and seeks to impose a greater restrain than was necessary to protect the goodwill or other business interest of the Plaintiff. Accordingly, the Court reforms the Covenant Not to Compete as follows: Market Area is defined to mean that area only where INTEGRATED PARTNERS, INC. did business in Texas ~~on~~ BETWEEN August 21, 2009 AND AUGUST 21, 2012. ~~which includes Dallas, Fort Worth, Houston, Austin, and San Antonio.~~ The scope of activity is reformed, from its industry-wide exclusion, to prohibit Defendant JOHN BARNETT between August 21, 2009 and August 21, 2012, being employed by any person, venture, partnership or other entity that is a courier or "hot shot" business providing services only to customers in the optical industry that were actual customers of INTEGRATED PARTNERS, INC. ~~on~~ BETWEEN August 21, AND AUGUST 21, 2012. ~~2009, which Plaintiff did not request such employer to provide services for Plaintiff or said customers, and that Defendant JOHN BARNETT during that time period actually dealt with.~~

~~IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant JOHN P. BARNETT did not violate the Covenant Not to Compete, as reformed, by virtue of his employment with Celerity Logistics between September 1, 2010 and August 21, 2012.~~

~~IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff is not entitled to damages, including attorney's fees, pursuant to Section 15.51-.52, or the TEXAS CIVIL PRACTICE & REMEDIES CODE.~~

SIGNED on this ___11th___ day of July, 2013.

_____
JUDGE PRESIDING

# TAB 2

ORIGINAL

CAUSE NO. DC-12-14499

| | | |
|---|---|---|
| THE BURKS GROUP, INC., D/B/A | § | IN THE DISTRICT COURT |
| INTEGRATED PARTNERS | § | |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| V. | § | 44th JUDICIAL DISTRICT |
| | § | |
| | § | |
| INTEGRATED PARTNERS, INC., | § | |
| DALROCK TRANSPORT, L.L.C. | § | |
| JOHN P. BARNETT, DAVID DREILING, | § | |
| ALLEN THOMAS GEORGI, | § | |
| *Defendants.* | § | DALLAS COUNTY, TEXAS |

## CHARGE OF THE COURT

**Ladies and Gentlemen of the Jury:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other juror only when you are all together in the jury room.

Remember my previous instruction: Do not discuss the case with anyone else either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

### INSTRUCTIONS

Here are the instructions for answering the questions:

1. Do not let bias, prejudice, or sympathy play any part in your decision.

CHARGE OF THE COURT
Page **1** of **10**

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight you give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence.

   The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question

carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

12. A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## DEFINITIONS

You are instructed to use the following definitions when the defined words appear in specific questions:

1. "Optical Laboratories" means Hoya North America, Legends 4.0/ VSP-1, and Essilor.

2. "Customer Agreements" means Plaintiff's Exhibits 3, 4, and 5.

## QUESTIONS

**QUESTION 1:**

Did John P. Barnett as agent for Dalrock Transport, LLC intentionally interfere with the Customer Agreements, if any?

Interference is intentional if committed with the desire to interfere with the contract or with the belief that interference is substantially certain to result.

Answer "Yes" or "No."

Answer:  _____NO_____

If you answered "Yes" to QUESTION 1, then answer QUESTION 2, otherwise do not answer the following question.

**QUESTION 2:**

Did John P. Barnett as agent for Dalrock Transport, LLC have a good faith belief that he had a right to persuade the three optical laboratories to hire Dalrock Transport, LLC?

Answer "Yes" or "No."

Answer: _____

If you answered "Yes" to QUESTION 1 and "No" to QUESTION 2, then answer QUESTION 3, otherwise do not answer the following question.

**QUESTION 3:**

What sum of money, if paid now in cash, would fairly and reasonably compensate The Burks Group, Inc., d/b/a Integrated Partners for its damages, if any, proximately caused by such interference?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Consider the following elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find. Answer separately, in dollars and cents, for damages, if any. Any recovery will be determined by the court when it applies the law

CHARGE OF THE COURT
Page **6** of **10**

to your answers at the time of judgment.

a. Loss of the value of the delivery business at the time of the interference.

   Answer: _____

b Lost Profits that were a natural, probable, and foreseeable consequence of such

interference.

   Answer: _____

## DELIBERATING INSTRUCTIONS

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. Have the complete charge read aloud if it will be helpful to your deliberations;

   b. Preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. Give written questions or comments to the bailiff who will give them to the judge;

   d. Write down the answers you agree on;

   e. Get the signatures for the verdict certificate; and

   f. Notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1. Unless otherwise instructed, you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.

   If 11 jurors agree on every answer, those 11 sign the verdict.

If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these questions? If you do not, please tell me now.

_____
JUDGE PRESIDING

## VERDICT CERTIFICATE

Check one:

_____Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____          Natalie Jenkins Sorrell
Signature of Presiding Juror              Printed Name of Presiding Juror

____Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| SIGNATURE | NAME PRINTED |
|---|---|
| 1. *[signature]* | Natalie Jenkins Sorrell |
| 2. *[signature]* | Mark Spinn |
| 3. *[signature]* | JENNIFER M. MANLEY |
| 4. *[signature]* | Erica Yarbrough |
| 5. *[signature]* | Nista Jones |
| 6. *[signature]* | Bridgett Reid |
| 7. *[signature]* | Arry W. LEEJAY II |
| 8. *[signature]* | Tommy Lemono |
| 9. *[signature]* | Jessica Peebles |
| 10. *[signature]* | GREG RUSSELL |
| 11. *[signature]* | Michael E. McCain |

# TAB 3

4588 DV11110244

CAUSE NO. DC 12-14499

| | | |
|---|---|---|
| THE BURKS GROUP, INC., D/B/A INTEGRATED PARTNERS, | § § § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | |
| INTEGRATED PARTNERS, INC., DALROCK TRANSPORT, L.L.C., JOHN P. BARNETT, DAVID DRIELING, ALLEN THOMAS GEORGI, GERRY WILLIAMS, CHRISTOPHER R. GONZALEZ, KUFFOUR DONKO-BOATENG, SUZANE A. THOMAZ, RHENDA GONZALEZ, STEVEN GREEN, AND LUIS ALEJANDRO FERNANDEZ | § § § § § § § § § § § § | B-44TH JUDICIAL DISTRICT |
| Defendants. | § | OF DALLAS COUNTY, TEXAS |

### ORDER DENYING PLAINTIFF'S MOTION FOR JNOV

On this the 24TH day of April, 2014, came on for consideration Plaintiff THE BURKS GROUP, INC. d/b/a INTEGRATED PARTNER's Motion for Judgment Non Obstante Verdicto ("Plaintiffs' Motion"). After considering the objections, evidence, arguments of counsel, and authorities, the Court makes the following findings:

IT IS ORDERED, ADJUDGED AND DECREED that:

1.    Defendants' objection in Paragraph No. 1 of Defendants, DALROCK TRANSPORT, L.L.C., JOHN P. BARNETT and INTEGRATED PARTNERS, INC.'s Response to Plaintiff's Motion for Judgment Non Obstante Verdicto ("Defendants' Response") is:

_____ SUSTAINED ___✓___ OVERRULED _____ MODIFIED

---

ORDER                                                                                            PAGE 1

2. Defendants' objection in Paragraph No. 2 of Defendants' Response is:

_____ SUSTAINED ___✓___ OVERRULED _____ MODIFIED

3. Defendants' objection in Paragraph No. 3 of Defendants' Response is:

_____ SUSTAINED ___✓___ OVERRULED _____ MODIFIED

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiffs' Motion is DENIED in its entirety.

SIGNED on April 25 , 2014.

_____
JUDGE PRESIDING

# TAB 4

45A B 811

CAUSE NO. DC 12-14499

| | | |
|---|---|---|
| THE BURKS GROUP, INC., D/B/A INTEGRATED PARTNERS, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | |
| INTEGRATED PARTNERS, INC., DALROCK TRANSPORT, L.L.C., JOHN P. BARNETT, DAVID DRIELING, ALLEN THOMAS GEORGI, GERRY WILLIAMS, CHRISTOPHER R. GONZALEZ, KUFFOUR DONKO-BOATENG, SUZANE A. THOMAZ, RHENDA GONZALEZ, STEVEN GREEN, AND LUIS ALEJANDRO FERNANDEZ | § § § § § § § § § § § § | B-44TH JUDICIAL DISTRICT |
| Defendants. | § | OF DALLAS COUNTY, TEXAS |

## JUDGMENT

On March 17, 2014, this case was called for jury trial. Plaintiff THE BURKS GROUP, INC. d/b/a INTEGRATED PARTNERS (hereinafter sometimes referred to as "Plaintiff") appeared in person through its President, Third-Party Defendant BRIAN BURKS, and through their attorney of record, John R. Jensen, and announced ready for trial. Defendant DALROCK TRANSPORT, LLC and Defendant INTEGRATED PARTNERS, INC., appeared in person through their representative, Defendant JOHN P. BARNETT, and through their attorney of record, Brian T. Cartwright, and announced ready for trial. Defendant DAVID DRIELING and Defendant ALLEN THOMAS GEORGI appeared in person *pro se* and announced ready for trial.[1] (All five said Defendants hereinafter collectively referred to as "Defendants"). Prior to conducting voir dire, the Plaintiff announced to the Court that it was proceeding to trial only on

116

its cause of action for tortious interference, and stipulated that there was no evidence of a violation of the Covenant Not to Compete as reformed by the Court in its Order, dated July 11, 2013. All of the parties then stipulated that the issue of attorney's fees (including whether or not such fees could or should be awarded, and, if so, the amount, reasonableness, and necessity thereof) would be presented to the trial court after a verdict was rendered. Having been previously demanded, a jury consisting of twelve (12) qualified jurors was then duly empaneled, and the case proceeded to trial.

At the conclusion of the evidence, the Court submitted the case to the jury on broad form Questions. The Charge of the Court, including the broad form Questions, and the verdict of the jury, is attached hereto as Exhibit "A" and incorporated herein by reference for all purposes.

It appears to the Court that, after considering the verdict of the jury, judgment should rendered in favor of the Defendants and against the Plaintiff.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the Plaintiff should take nothing by this suit.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that all costs of court spent or incurred in this case are adjudged against the Plaintiff.

All writs and processes for the enforcement and collection of this judgment or costs of court may issue as necessary.

All other relief not expressly granted herein is denied.

SIGNED AND ENTERED this the __11__ day of __SEPTEMBER__, 2014.

---

[1] All other named defendants were previously non-suited by Court Order on May 15, 2013.

---

JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

John R. Jensen, SBOT # 10646500
ATTORNEY FOR PLAINTIFF AND
THIRD-PARTY DEFENDANT

Brian T. Cartwright, SBOT#03940900
ATTORNEY FOR DEFENDANTS

118



CAUSE NO. DC-12-14499

| | | |
|---|---|---|
| THE BURKS GROUP, INC., D/B/A | § | IN THE DISTRICT COURT |
| INTEGRATED PARTNERS | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | 44ᵗʰ JUDICIAL DISTRICT |
| | § | |
| INTEGRATED PARTNERS, INC., | § | |
| DALROCK TRANSPORT, L.L.C. | § | |
| JOHN P. BARNETT, DAVID DREILING, | § | |
| ALLEN THOMAS GEORGI, | § | |
| *Defendants.* | § | DALLAS COUNTY, TEXAS |

## CHARGE OF THE COURT

**Ladies and Gentlemen of the Jury:**

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other juror only when you are all together in the jury room.

Remember my previous instruction: Do not discuss the case with anyone else either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

### INSTRUCTIONS

Here are the instructions for answering the questions:

1. Do not let bias, prejudice, or sympathy play any part in your decision.

CHARGE OF THE COURT
Page 1 of 10

**EXHIBIT**
*A*

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight you give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence.

   The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question

CHARGE OF THE COURT
Page 2 of 10

carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least 10 of the 12 jurors. The same 10 jurors must agree on every answer. Do not agree to be bound by a vote of anything less than 10 jurors, even if it would be a majority.

12. A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

CHARGE OF THE COURT
Page 3 of 10

## DEFINITIONS

You are instructed to use the following definitions when the defined words appear in specific questions:

1. "Optical Laboratories" means Hoya North America, Legends 4.0/ VSP-1, and Essilor.

2. "Customer Agreements" means Plaintiff's Exhibits 3, 4, and 5.

## QUESTIONS

### QUESTION 1:

Did John P. Barnett as agent for Dalrock Transport, LLC intentionally interfere with the Customer Agreements, if any?

Interference is intentional if committed with the desire to interfere with the contract or with the belief that interference is substantially certain to result.

Answer "Yes" or "No."

Answer:    _NO_

122

If you answered "Yes" to QUESTION 1, then answer QUESTION 2, otherwise do not answer the following question.

**QUESTION 2:**

Did John P. Barnett as agent for Dalrock Transport, LLC have a good faith belief that he had a right to persuade the three optical laboratories to hire Dalrock Transport, LLC?

Answer "Yes" or "No."

Answer: _____

CHARGE OF THE COURT
Page 5 of 10

123

If you answered "Yes" to QUESTION 1 and "No" to QUESTION 2, then answer QUESTION 3, otherwise do not answer the following question.

**QUESTION 3:**

What sum of money, if paid now in cash, would fairly and reasonably compensate The Burks Group, Inc., d/b/a Integrated Partners for its damages, if any, proximately caused by such interference?

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Consider the following elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find. Answer separately, in dollars and cents, for damages, if any. Any recovery will be determined by the court when it applies the law

**CHARGE OF THE COURT**
Page 6 of 10

to your answers at the time of judgment.

a. Loss of the value of the delivery business at the time of the interference.

Answer: _____

b. Lost Profits that were a natural, probable, and foreseeable consequence of such interference.

Answer: _____

CHARGE OF THE COURT
Page 7 of 10

## DELIBERATING INSTRUCTIONS

**Presiding Juror:**

1. When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2. The presiding juror has these duties:

   a. Have the complete charge read aloud if it will be helpful to your deliberations;

   b. Preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

   c. Give written questions or comments to the bailiff who will give them to the judge;

   d. Write down the answers you agree on;

   e. Get the signatures for the verdict certificate; and

   f. Notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Signing the Verdict Certificate:**

1. Unless otherwise instructed, you may answer the questions on a vote of 10 jurors. The same 10 jurors must agree on every answer in the charge. This means you may not have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

2. If 10 jurors agree on every answer, those 10 jurors sign the verdict.

   If 11 jurors agree on every answer, those 11 sign the verdict.

CHARGE OF THE COURT
Page 8 of 10

126

If all 12 of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3. All jurors should deliberate on every question. You may end up with all 12 of you agreeing on some answers, while only 10 or 11 of you agree on other answers. But when you sign the verdict, only those 10 who agree on every answer will sign the verdict.

Do you understand these questions? If you do not, please tell me now.

<u>JUDGE PRESIDING</u>

## VERDICT CERTIFICATE

Check one:

_____Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

Signature of Presiding Juror          <u>Natalie Jenkins Sorrell</u>
                                      Printed Name of Presiding Juror

✓ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

| SIGNATURE | NAME PRINTED |
|-----------|--------------|
| 1. _Natalie Jenkins Sorrell_ | Natalie Jenkins Sorrell |
| 2. _Mark Spann_ | Mark Spann |
| 3. _Jennifer M. Manley_ | JENNIFER M. MANLEY |
| 4. _Erica Yarbrough_ | Erica Yarbrough |
| 5. _Niota Jones_ | Niota Jones |
| 6. _Bridgett Reid_ | Bridgett Reid |
| 7. _Avry W. LeeJay II_ | Avry W. LEEJAY II |
| 8. _Tommy Lemond_ | Tommy Lemond |
| 9. _Jessica Peebles_ | Jessica Peebles |
| 10. _Greg Russell_ | GREG RUSSELL |
| 11. _Michael E. McCain_ | Michael E. McCain |

CHARGE OF THE COURT
Page 10 of 10

# TAB 5

4608 00533

CAUSE NO. DC 12-14499

| | | |
|---|---|---|
| THE BURKS GROUP, INC., D/B/A INTEGRATED PARTNERS, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § § | |
| v. | § § § | |
| INTEGRATED PARTNERS, INC., DALROCK TRANSPORT, L.L.C., JOHN P. BARNETT, DAVID DRIELING, ALLEN THOMAS GEORGI, GERRY WILLIAMS, CHRISTOPHER R. GONZALEZ, KUFFOUR DONKO-BOATENG, SUZANE A. THOMAZ, RHENDA GONZALEZ, STEVEN GREEN, AND LUIS ALEJANDRO FERNANDEZ | § § § § § § § § § § § § § § § | B-44TH JUDICIAL DISTRICT |
| Defendants. | § | OF DALLAS COUNTY, TEXAS |

## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

On this the 14th day of November, 2014, came on for consideration Plaintiff THE BURKS GROUP, INC. d/b/a INTEGRATED PARTNER's Motion for New Trial ("Plaintiff's Motion"). After considering the objections, evidence, arguments of counsel, and authorities, the Court makes the following findings:

IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff's Motion is DENIED in its entirety.

SIGNED on the 14th day of November, 2014.

_____
JUDGE PRESIDING

---

ORDER                                                                                    PAGE 1

# TAB 6

Vernon's Texas Statutes and Codes Annotated
   Business and Commerce Code (Refs & Annos)
      Title 2. Competition and Trade Practices
         Chapter 15. Monopolies, Trusts and Conspiracies in Restraint of Trade (Refs & Annos)
            Subchapter E. Covenants Not to Compete (Refs & Annos)

V.T.C.A., Bus. & C. § 15.50

§ 15.50. Criteria for Enforceability of Covenants Not to Compete

Effective: September 1, 2009
Currentness

(a) Notwithstanding Section 15.05 of this code, and subject to any applicable provision of Subsection (b), a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

(b) A covenant not to compete relating to the practice of medicine is enforceable against a person licensed as a physician by the Texas Medical Board if such covenant complies with the following requirements:

(1) the covenant must:

(A) not deny the physician access to a list of his patients whom he had seen or treated within one year of termination of the contract or employment;

(B) provide access to medical records of the physician's patients upon authorization of the patient and any copies of medical records for a reasonable fee as established by the Texas Medical Board under Section 159.008, Occupations Code; and

(C) provide that any access to a list of patients or to patients' medical records after termination of the contract or employment shall not require such list or records to be provided in a format different than that by which such records are maintained except by mutual consent of the parties to the contract;

(2) the covenant must provide for a buy out of the covenant by the physician at a reasonable price or, at the option of either party, as determined by a mutually agreed upon arbitrator or, in the case of an inability to agree, an arbitrator of the court whose decision shall be binding on the parties; and

(3) the covenant must provide that the physician will not be prohibited from providing continuing care and treatment to a specific patient or patients during the course of an acute illness even after the contract or employment has been terminated.

(c) Subsection (b) does not apply to a physician's business ownership interest in a licensed hospital or licensed ambulatory surgical center.

**Credits**

Added by Acts 1989, 71st Leg., ch. 1193, § 1, eff. Aug. 28, 1989. Amended by Acts 1993, 73rd Leg., ch. 965, § 1, eff. Sept. 1, 1993; Acts 1999, 76th Leg., ch. 1574, § 1, eff. Sept. 1, 1999; Acts 2001, 77th Leg., ch. 1420, § 14.729, eff. Sept. 1, 2001; Acts 2009, 81st Leg., ch. 971, § 1, eff. Sept. 1, 2009.

Notes of Decisions (315)

V. T. C. A., Bus. & C. § 15.50, TX BUS & COM § 15.50
Current through the end of the 2013 Third Called Session of the 83rd Legislature

---

**End of Document**                                        © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Business and Commerce Code (Refs & Annos)
    Title 2. Competition and Trade Practices
      Chapter 15. Monopolies, Trusts and Conspiracies in Restraint of Trade (Refs & Annos)
        Subchapter E. Covenants Not to Compete (Refs & Annos)

V.T.C.A., Bus. & C. § 15.51

§ 15.51. Procedures and Remedies in Actions to Enforce Covenants Not to Compete

Currentness

(a) Except as provided in Subsection (c) of this section, a court may award the promisee under a covenant not to compete damages, injunctive relief, or both damages and injunctive relief for a breach by the promisor of the covenant.

(b) If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, for a term or at will, the promisee has the burden of establishing that the covenant meets the criteria specified by Section 15.50 of this code. If the agreement has a different primary purpose, the promisor has the burden of establishing that the covenant does not meet those criteria. For the purposes of this subsection, the "burden of establishing" a fact means the burden of persuading the triers of fact that the existence of the fact is more probable than its nonexistence.

(c) If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed, except that the court may not award the promisee damages for a breach of the covenant before its reformation and the relief granted to the promisee shall be limited to injunctive relief. If the primary purpose of the agreement to which the covenant is ancillary is to obligate the promisor to render personal services, the promisor establishes that the promisee knew at the time of the execution of the agreement that the covenant did not contain limitations as to time, geographical area, and scope of activity to be restrained that were reasonable and the limitations imposed a greater restraint than necessary to protect the goodwill or other business interest of the promisee, and the promisee sought to enforce the covenant to a greater extent than was necessary to protect the goodwill or other business interest of the promisee, the court may award the promisor the costs, including reasonable attorney's fees, actually and reasonably incurred by the promisor in defending the action to enforce the covenant.

**Credits**
Added by Acts 1989, 71st Leg., ch. 1193, § 1, eff. Aug. 28, 1989. Amended by Acts 1993, 73rd Leg., ch. 965, § 2, eff. Sept. 1, 1993.

Notes of Decisions (109)

V. T. C. A., Bus. & C. § 15.51, TX BUS & COM § 15.51
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                                                     © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Business and Commerce Code (Refs & Annos)
    Title 2. Competition and Trade Practices
      Chapter 15. Monopolies, Trusts and Conspiracies in Restraint of Trade (Refs & Annos)
        Subchapter E. Covenants Not to Compete (Refs & Annos)

V.T.C.A., Bus. & C. § 15.52

§ 15.52. Preemption of Other Law

Currentness

The criteria for enforceability of a covenant not to compete provided by Section 15.50 of this code and the procedures and remedies in an action to enforce a covenant not to compete provided by Section 15.51 of this code are exclusive and preempt any other criteria for enforceability of a covenant not to compete or procedures and remedies in an action to enforce a covenant not to compete under common law or otherwise.

**Credits**
Added by Acts 1993, 73rd Leg., ch. 965, § 3, eff. Sept. 1, 1993.

Notes of Decisions (8)

V. T. C. A., Bus. & C. § 15.52, TX BUS & COM § 15.52
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 7

## ASSET PURCHASE AGREEMENT

The parties to this Asset Purchase Agreement (the "Agreement") are Integrated Partners, Inc., 1225 Lausanne Avenue, Dallas, Texas 75208, hereinafter referred to as "Seller," The Burks Group, Inc., 3173 Williamsburg, Port Neches, Texas 77651, hereinafter referred to as "Buyer," John P. Barnett, hereinafter referred to as the "Individual" and Brian Burks, hereinafter referred to as the "Guarantor."

WHEREAS, Seller owns certain assets operated as a going concern known and operated under the trade name "Integrated Partners" located at 1508 East Belt Line Road, Suite 205, Carrollton, Texas 75006. The going concern of Seller is hereinafter sometimes referred to as the "Business."

WHEREAS FURTHER, Buyer desires to buy the assets of the Seller under the terms and conditions as hereinafter expressed.

WHEREAS FURTHER, the Buyer would only purchase the Assets if the Individual joined in this transaction as hereinafter expressed.

WHEREAS FURTHER, the Seller would only sell the Assets to the Buyer if the Guarantors joined in this transaction as hereinafter expressed.

NOW, THEREFORE, for and in consideration of the mutual covenants as herein contained and based on the foregoing, the parties hereto agree as follows:

**I.    The Total Consideration and Allocation.**  In consideration of the transfer of all the assets, except as specifically noted herein, used in or by Seller's going concern d/b/a "Integrated Partners" such assets being both tangible and intangible and hereinafter referred to as the "Assets", Buyer shall pay to Seller the sum of SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000.00), allocated as follows:

1.    Equipment, furniture, fixtures, etc.
2.    Goodwill
3.    Covenant Not to Compete of the Seller and the Individual
      **TOTAL CONSIDERATION**                                          $750,000.00

Buyer does not assume and Seller warrants that Buyer will not be responsible for any liabilities of Seller except as specifically provided in this Agreement.  Further, the parties agree that they will use the above allocation of total consideration when filing the Internal Revenue Service form 8594 with their tax return for this tax year.

**II.    Manner of Payment of the Total Consideration.**  The Total Consideration shall be paid as follows:

1.    Down payment                                                          650,000.00
2.    Note Retained by Seller                                            100,000.00
      **TOTAL**                                                          **$  750,000.00**

**III.    Agreement as to Promissory Note.**  As security for the promissory note retained by Seller referenced in Article II., which note is attached hereto as Exhibit "A," Buyer has agreed to grant to Seller a purchase money security interest in the Assets transferred pursuant to this Agreement and has agreed to supply a Security Agreement and UCC Financing Statement to



evidence the purchase money security interest. The Security Agreement is attached hereto as Exhibit "B." The UCC Financing Statement is attached hereto as Exhibit "C."

**IV. Personal Guarantee of the Promissory Note.** The Note in Exhibit "A" will be personally guaranteed by the Guarantor and such guarantee is given for and in the same consideration of the sale/purchase as contemplated by this Agreement. The Guarantee is attached hereto as Exhibit "D."

**V. Bill of Sale.** Attached hereto as Exhibit "E" is a Bill of Sale which fully and finally transfers all of the Assets described in such Bill of Sale from Seller to Buyer.

**VI. Agreements as to Closing Date.** The "Closing Date" as that term is used in this Agreement and the effective date of the transfer and transactions contemplated by this Agreement shall be the date of this Agreement.

**VII. Representations and Warranties of Seller and the Individual.** Each of Seller and the Individual hereby represents and warrants, jointly and severally, to Buyer as follows:

A. The Seller is a corporation, duly organized and validly existing under the laws of the State of Texas. The Seller is authorized to do business in each jurisdiction where the activities of the Seller require such authorization.

B. This Agreement and all transactions contemplated hereby will not result in any violation of any of the terms and provisions of any indenture or other agreement to which Seller and/or the Individual is a party or by which Seller or the Individual may otherwise be bound, or of any law, rule, license, regulation, judgment, order or decree governing or affecting the operation of the Business of Seller.

C. All authorizations, approvals and consents necessary for execution and delivery by Seller of this Agreement and for the consummation by Seller and the Individual of the transactions contemplated hereby have been given, which if not given would have a materially adverse affect on Seller and/or the Business. The corporate resolution of the Seller authorizing this transaction is attached hereto as Exhibit "F."

D. The Seller and the Individual each has agreed to supply the services of the Individual to the Buyer, and the Individual will be available to Buyer on the premises of the Business until October 1st, 2009, full time if necessary, during normal business hours, for the price as is set forth in Article I of this Agreement, for the purpose of training Buyer in the detailed operations of the Business and assisting in a smooth and orderly transition of the Business from Seller to Buyer.

E. Seller has, and there shall vest in Buyer, good, indefeasible and marketable title to the Assets free and clear of all debts, claims, liens, encumbrances, charges, equities, restrictions, or any other imperfections of title whatsoever (including without limitation any federal, state, or municipal tax liens for taxes) to all the Assets except as set forth on Exhibit "G" to this Agreement.

F. Each of the Seller and the Individuals has disclosed, in writing, all agreements, contracts, notes, bonds, debentures, indentures, mortgages, deeds of trust, leases, licenses, obligations, promises, settlements, and other such agreements and understandings (whether written or oral and whether express or implied) (including to mean any real estate contracts) (collectively, the "Contracts") that are material to the Business. The Contracts are all in full

force and effect, are not in default by Seller, or to the knowledge of the Seller by any other party, and to the knowledge of the Seller are valid and existing. Attached hereto as Exhibit "H" is a description of the Contracts.

G. This Agreement and the other agreements contemplated hereby are legal, valid and binding obligations of the Seller and the Individual, enforceable against each of them in accordance with their respective terms, subject to the laws in affect from time to time governing bankruptcy and creditor's rights.

H. As of the Closing Date, all tangible personal property that is part of the Assets, whether listed on Schedule "A" to the Bill of Sale or not, is in reasonable working condition given their age, appearance and prior use. No warranty as to physical condition is given regarding such Assets after the Closing Date and after the Closing Date except as stated in the first sentence of this paragraph, ALL WARRANTIES, INCLUDING THE WARRANTY OF MERCHANTABILITY AND THAT OF FITNESS FOR ANY PARTICULAR PURPOSE ARE SPECIFICALLY DISCLAIMED, the Buyer understanding that the Seller is not a merchant of any of the Assets and that the Assets are used goods.

I. There are no actions, suits, audits, proceedings, judgments or investigations (whether or not purportedly on behalf of Seller or the Individual) pending or to the knowledge of Seller, or the Individual, threatened against or affecting Seller or the Seller's Assets to be transferred, and to the knowledge of the Seller and the Individual, there is no basis for anyone to assert any such actions, suits, audits, proceedings, judgments or investigations against the Seller or the Business.

J. No representation or warranty made by Seller or the Individual in this Agreement, and no statement contained in any exhibit hereto furnished by the Seller or the Individual, or in any certificate or other instrument furnished by Seller or the Individual in connection with this Agreement, or the transactions contemplated hereby, on or before the Closing Date, contains or will contain any untrue statement of a material fact, or omits or will omit to state all material facts which are necessary in order to make the statements contained therein not misleading. Neither the Seller nor the Individual has failed to reveal any information known to either the Seller or the Individual that would be materially adverse to the Buyer's decision to purchase the Business or the Assets.

K. The financial statements and other financial information of Seller which have been delivered to Buyer, are complete and accurate in all material respects and have been prepared consistent with past practices, consistently applied throughout the periods involved and present fairly and accurately the financial condition and results of operations of the Seller and/or the going concern d/b/a "Integrated Partners" for the periods indicated. There are no liabilities of the Seller, the Individual or the Business for which the Buyer shall be responsible, or regarding which the Assets shall be subject, except for those specifically agreed to be assumed by the Buyer as set forth in this Agreement, if any. All Liabilities of the Business that have not been expressly assumed by the Buyer shall be paid in full prior to or simultaneously with Closing, the Seller and the Individuals understanding that without such representation, warranty and payment, the Buyer never would have entered into this Agreement.

L. The Seller has filed all income tax and other tax returns (the "Tax Returns") that Seller was required to file. All such Tax Returns were correct and complete in all material respects. All taxes owed by the Seller (whether or not shown on any Tax Return) have been paid.

The Seller is not currently the beneficiary of any extension of time within which to file any Tax Return. There is no material dispute or claim concerning any tax liability of the Seller either (i) claimed or raised by any authority in writing or (ii) as to which any of the Seller and the Individual has knowledge based upon personal contact with any agent of such authority. The Seller has not waived any statute of limitations in respect of any taxes or agreed to any extension of time with respect to any tax assessment or deficiency.

M. Each of Seller and the Individual warrants that the Business, as it is presently operated is operating under all required current health and fire department permits and certificates and is not in violation of any rules, regulations, or code provisions with respect thereto.

N. Each of Seller and the Individual is in substantial compliance, provided that no lack of compliance has or will have any materially adverse effect, in respect of Seller's operations, equipment, other property, practices and all other aspects of its Business, with all laws, ordinances, regulations, orders, judgments, rules and decrees of all governmental authorities, including but not limited to those relating to zoning, solid waste management, protection of the environment, and occupational safety and health, which have any application to the operations of Seller, and each of Seller and the Individual, as applicable, has obtained and possesses all permits and licenses necessary for it to conduct its Business as heretofore conducted.

O. From the date on which the Buyer first contacted either the Seller or the Individual about the sale of the Assets, as of the date of this Agreement and through the Closing Date, pending consummation of the sale and purchase described in this Agreement, each of Seller and the Individual has operated, and if the effective date of this Agreement is any date after the date of this Agreement, each of Seller and the Individual will continue to operate the Business in the same manner as it has been operated by Seller in the past and no materially adverse change has occurred, or will be known to the Seller that will be about to occur as of the Closing Date, which in the knowledge of either the Seller or the Individual might adversely affect the Business or its Assets. Without limiting the foregoing, each of the Seller and the Individual agrees, warrants, and covenants that from the date on which the Buyer first contacted either the Seller or the Individual about the sale of the Assets and pending the signing of this Agreement, each of Seller and the Individual has done as follows:

1. Maintained customary business hours.
2. Maintained customary pricing and promotional programs.
3. Kept up the goodwill of the Business.
4. Not made any substantial changes in the operation of the Business, including but not limited to hiring and firing of employees.

P. Seller and the Individual specifically disclaim any liability whatsoever regarding the future profitability of the Business, general business prospects for the Business, retention of customers, continuation of contracts, retention of business contacts, retention of supply sources, regarding business prospects in general or regarding general economic conditions relative to the Business and disclaim any representation of warranty to the contrary with respect to such future events.

**VIII. Representations and Warranties of Buyer and the Guarantor.** Each of the Buyer and the Guarantor hereby represents and warrants to Seller as follows:

A. The Buyer is a corporation, duly organized and validly existing under the laws of the State of Texas. The Buyer is authorized to do business in each jurisdiction where the activities of the Buyer require such authorization.

B. Buyer shall make available to Seller, all financial statements, including any balance sheet, operating statement, etc., prepared regarding the Business and any and all other financial information regarding the Business which has been traditionally generated by Seller, consistent with past practices, consistently applied throughout the periods involved, as long as Buyer is indebted to Seller by reason of this Agreement. Seller's right to such financial information shall be at reasonable times with reasonable notice having been given to Buyer.

C. This Agreement and all transactions contemplated hereby will not result in any violation of any of the terms and provisions of any indenture, or other agreement to which Buyer is a party or to which Buyer may otherwise be bound, or of any law, rule, license, regulation, judgment, order or decree governing or affecting Buyer.

D. All authorizations, approvals and consents necessary for the execution and delivery by Buyer of this Agreement and for the consummation by Buyer of the transactions contemplated hereby have been given, which if not given would have a materially adverse affect on Seller and/or Buyer. The corporate resolution of the Buyer authorizing this transaction is attached hereto as Exhibit "I."

E. Buyer understands and agrees that except as stated specifically to the contrary herein, Seller has made no representations or warranties regarding the future of the Business and that after the Closing Date, Seller will be deemed to have specifically disclaimed any liability whatsoever regarding the future profitability of the Business, sales levels, general business prospects for the Business, retention of customers, retention of employees, continuation of contracts, retention of business contacts, retention of supply sources, business prospects in general or regarding general economic conditions relative to the Business.

F. Buyer acknowledges and agrees that after the Closing Date Buyer is accepting the Assets in the physical condition AS IS, WHERE IS AND WITH ALL FAULTS, with the exception that the Buyer does not release Seller from any of Seller's representations and warranties regarding title, compliance with laws and with respect to the environmental or other contamination in connection with the physical condition of the Assets.

**IX. Prorations.** In the event that the parties hereto have not prorated all costs, expenses, and other expense items of the Business at or before the Closing Date, the parties hereto agree that all costs, expenses and other liability items shall be prorated to the Closing Date with Seller being responsible for any and all costs, expenses or other liability items up to the Closing Date and Buyer being responsible for all costs, expenses and other items from and after the Closing Date, except as otherwise specifically provided for in this Agreement to the contrary. The parties have agreed to prorate all items not handled at or before the Closing Date in accordance with the foregoing statements outside of closing.

**X. Taxes.** The parties understand that by law, the Seller has liability for the personal property taxes associated with the Business for the year in which the Closing occurs. However, the Buyer will most likely receive the tax statement for the personal property taxes associated with the Business, as typically, the tax statement is mailed directly to the address of the Business. Therefore, because the Buyer will most likely receive the tax statement for the personal property

taxes associated with the Business, the parties have agreed to estimate those taxes based on the previous year's tax bill and prorate the personal property taxes associated with the Business for the year in which the Closing occurs. Additionally, the parties understand that the Seller will be charged for the Seller's prorated share of those estimated taxes and the Buyer will receive credit for the Seller's prorated share of those taxes on the Settlement Statement provided to the parties at the Closing. Buyer hereby accepts the responsibility for the payment of those taxes, and will indemnify and hold the Seller harmless for same. Each party also agrees that Seller will remain responsible for any type of taxes or special governmental assessments accruing regarding the Business from January 1, 2009, to the Closing Date. Upon statements, if any, being received by Buyer, Seller or the Individual will then pay Seller's prorated share of such taxes or assessments, if the amount of the actual prorated taxes turns out to be more than the estimated prorated Seller's share of the taxes. In the event Seller does not pay Seller's actual prorated share of these taxes, Buyer may then offset these amounts from the amounts owed to Seller by Buyer. Buyer understands that the Buyer shall be responsible for any sales tax on vehicle transfer(s), if any, pursuant to this Agreement.

**XI. Sales Tax Audit.** The parties to this Agreement acknowledge and agree that as of the Closing Date there may have been no sales tax audit regarding whether or not there are any outstanding taxes, penalties or interest relative to sales taxes or liens on the property being transferred relating to the property being transferred, etc. However, the parties have agreed to the handling of any outstanding indebtedness or other claims or security interests in the Assets transferred, or causes of action which may arise concerning the operations of the Business d/b/a "Integrated Partners" by Seller prior to the Closing Date pursuant to numerous articles in this Agreement and Seller agrees to indemnify and hold harmless Buyer with respect to such claims or any liabilities whatsoever, except as specifically noted herein. Therefore, Buyer acknowledges and agrees that the sales tax audit is not required prior to the consummation of the sale/purchase as contemplated herein.

**XII. Lien Searches.** The parties to this Agreement acknowledge and agree that as of the Closing Date there may have been no record search of the tax lien records, judgment lien records, UCC records, other security interest records, nor any other source regarding whether or not there are any outstanding liens on the property being transferred, liabilities relating to the property being transferred, etc. However, the parties have agreed to the handling of any outstanding indebtedness or other claims or security interests in the Assets transferred, or causes of action which may arise concerning the operations of the Business d/b/a "Integrated Partners" by Seller prior to the Closing Date pursuant to numerous articles in this Agreement and Seller agrees to indemnify and hold harmless Buyer with respect to such claims or any liabilities whatsoever, except as specifically noted herein. Therefore, Buyer acknowledges and agrees that lien searches or other lien searches or investigations are not required prior to the consummation of the sale/purchase as contemplated herein.

**XIII. Representation by Intermediary Attorney.** Both Buyer and Sellers hereby mutually acknowledge and agree that attached hereto as Exhibit "J" is a "Representation Letter" in accordance with State Bar Rule 1.07 from John C. Willems, who acted as the drafting attorney for the purpose of preparing the "Closing Documents" in order to effectuate the sale/purchase as contemplated by this Agreement. Sellers and the Buyer acknowledge the receipt of such letter, state that they have discussed the letter with John C. Willems and have had all of their questions regarding legal representation answered.

In addition, even though the Seller and the Buyer have agreed to split the cost and expense of such drafting, Seller hereby acknowledges and agrees that Seller has been represented by counsel of Seller's own choosing and was not represented nor counseled or advised by John C. Willems.

**XIV. Nature and Survival of Representations, Etc.** All statements contained in any certificates or other instrument delivered on behalf of any party hereto in connection with this Agreement, or in connection with the transactions contemplated herein shall be deemed representations and warranties by such party. All representations, warranties, agreements and covenants in this Agreement shall be deemed restated as of, and shall survive the Closing Date.

**XV. Brokerage Commission.** Seller acknowledges that Seller has been represented by International Business Exchange ("Broker") in negotiating and procuring the Buyer as is set forth in this Agreement. Seller acknowledges and agrees that the commission paid to the Broker is Seller's sole and exclusive responsibility. By Seller's signature below, Seller authorizes and directs the closing agent(s) to disburse the commission due and payable to the Broker at the time of closing and that such commission is the sole and exclusive responsibility of the Seller. Buyer represents and warrants that it has not been represented by any broker and that the Seller shall have no liability for any broker or finder claiming through the Buyer.

**XVI. Notices.** All notices, consents, requests, demands or other communications hereunder shall be in writing and shall be deemed to have been duly given or delivered, if delivered personally or mailed by registered, overnight or certified mail, return receipt requested, with the first class postage prepaid as follows:

### TO BUYER OR THE GUARANTOR:

The Burks Group, Inc.
Brian Burks, President
3173 Williamsburg
Port Neches, Texas 77651

### TO SELLER OR THE INDIVIDUAL:

Integrated Partners, Inc.
John P. Barnett, President
P.O. Box 50613
Denton, Texas 76206

Any change in the above addresses shall be deemed effective if made in accordance with this article.

**XVII. Modification.** This Agreement shall not be modified or amended except by instrument in writing signed by or on behalf of all the parties hereto.

**XVIII. Law to Govern and Venue.** This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Texas. The choice of law provision of this Agreement shall be applied with no effect given to the principles of conflicts of law, and without regard to the Choice of Law rules of the State of Texas. The parties agree that any claims, actions, or controversy regarding this Agreement, the transaction subject of this Agreement or any act, omission, occurrence, event or circumstance relating to or resulting from this

Agreement, shall be resolved in Dallas County, Texas. The parties agree to forbear from bringing suit in any state or county other than Dallas, County, Texas.

**XIX. Assignment.** This Agreement may not be assigned by any party without the written consent of the other parties, except that the Covenant Not to Compete hereunder shall be deemed assignable by the Buyer. Except as provided herein to the contrary, nothing in this Agreement is intended to confer upon any person, other than the parties hereto and their successors, any rights or remedies under or by reason of this Agreement. Except as provided herein to the contrary, all assignments or attempted assignments shall be deemed valid only if in writing.

**XX. Exhibits.** All Exhibits to this Agreement shall be deemed to be part of this Agreement and are hereby intended to be incorporated herein by reference as if set out herein verbatim.

**XXI. Entire Agreement, Amendments and Waivers.** This instrument, including all exhibits attached hereto, contains the entire agreement of the parties. Any and all prior agreements or understandings of the parties hereto and their shareholders, officers directors, agents, or employees, whether written or oral, are hereby superseded by this Agreement, except as specifically provided for in this Agreement. Any modification or amendment to, or waiver of, any provision of this Agreement (or any document delivered in connection with this Agreement unless otherwise expressly provided therein) may be made only by an instrument in writing executed by the party against whom enforcement thereof is sought. No failure or delay on the part of any party in exercising any right, power, or privilege hereunder or under any of the documents delivered in connection with this Agreement shall operate as a waiver of such right, power, or privilege; nor shall any single or partial exercise of any such right, power, or privilege preclude any other or future exercise thereof or the exercise of any other right, power, or privilege.

**XXII. Attorney's Fees.** Should any party deem it necessary to obtain the services of legal counsel to assist with respect to any dispute arising between the parties concerning this Agreement, or with respect to the resolution of any dispute pursuant to this Agreement, then in such event, reimbursement for any reasonable attorney's fees, costs and expenses may be apportioned or awarded as the trier(s) of fact deem appropriate.

**XXIII. Headings.** The article paragraph headings of this Agreement are for administrative convenience only and shall not be construed in interpreting this Agreement.

**XXIV. Further Assurances.** The parties to this Agreement mutually, both individually and collectively covenant and agree that they will do any and all things reasonably necessary after the date of this Agreement in order to effectuate all the terms and conditions of this Agreement. Each party agrees to cooperate with the other including but not limited to signing any and all documents necessary in order to pass title to the Assets and effectuate the other terms and conditions of this Agreement. However, Seller shall in no way be required to expend any other sums of money in order to effectuate the provisions of this paragraph.

**XXV. Deposits.** All security deposits of any nature made by Seller with respect to the going concern d/b/a "Integrated Partners" shall be retained by Seller. Buyer acknowledges and agrees to replenish any such deposit of whatever nature, if any. In the alternative, Buyer agrees to reimburse Seller for such deposits, if any.

**XXVI. Leases.** Buyer acknowledges and agrees that all matters concerning the land lease for the business location of the going concern d/b/a "Integrated Partners" have been or are to be

handled outside of closing and in the event such matters have not been fully resolved prior to the Closing Date, agrees to the handling of such matters after the Closing Date of the transaction contemplated herein.

**XXVII. Assumed Name.** The parties to this Agreement acknowledge and agree that the trade name "Integrated Partners" is to be transferred as one of the Assets to be sold/purchased pursuant to the terms of this Agreement. Attached hereto as Exhibit "K" and "L" are the Withdrawal of Assumed Name Certificate and Assumed Name Certificate evidencing the fact that Seller is withdrawing from such trade name and Buyer is assuming such trade name. In addition, the Seller and the Individual each agrees to either dissolve the Seller's existence or change its name within six (6) months from and after the Closing Date.

**XXVIII. Covenant Not To Compete.** Attached hereto is the Covenant Not to Compete of Seller and the Individual for the benefit of Buyer providing that Seller and the Individual shall not compete with Buyer for a period of three (3) years commencing on even date with this Agreement and ending three (3) years hence. The Covenant Not To Compete is attached as Exhibit "M" and shall be deemed a separate and distinct agreement independent of any provision of this Agreement. The parties expressly agree that the Covenant Not to Compete in Exhibit "M" shall become null and void in the event that the Buyer, its successors and assigns (where permitted hereunder) shall cease to operate the Business as a courier business. Each of the terms and conditions of the Covenant Not to Compete contained in this Article was bargained for by the parties in negotiations between and among them and the professionals representing each of them, and the corresponding values established for each of the component parts of the Covenant Not To Compete have been set pursuant to those negotiations. Each of the parties hereto acknowledges and agrees that each would not have entered into the transactions contemplated by this Agreement unless the terms and conditions of the Covenant Not To Compete were agreed to by each as written.

**XXIX. Assumption of Contracts.** Attached hereto as Exhibit "N" is the Assignment and Assumption Agreement of the Parties providing that the Seller is assigning and the Buyer is assuming certain of the contracts of the Seller pursuant to the terms and conditions of the Assignment and Assumption Agreement.

**XXX. Remedies Not Exclusive.** The remedies provided for in this Agreement are not exclusive of any other remedy available to any party, that is, they are not in lieu of, but are in addition to any other remedy available to any party at law or in equity.

**XXXI. Binding Nature.** This Agreement shall be binding on and shall inure to the benefit of the heirs, executors, administrators, successors, and assigns of the parties hereto, that nothing contained in this paragraph shall be construed as a consent to any assignment of this Agreement or the duties and obligations under this Agreement by either Buyer or Seller. Each of the parties to this Agreement acknowledge and agree that there are no third party beneficiaries to this Agreement and that none is intended.

**XXXII. Invalidity or Unenforceable Nature.** In the event that any provision hereof or any part thereof is deemed to be invalid, illegal or unenforceable for any reason, then the parties to this Agreement hereby mutually acknowledge and agree that it is their intention to have any such invalid, illegal or unenforceable provision or part thereof be deleted from this Agreement as if it had never been included in this Agreement, so that the remainder of this Agreement is valid, binding and enforceable in accordance with its terms.

**Accounts Receivable.** The accounts receivable products of the Seller (the "Accounts Receivable") shall remain the property of the Seller. However, Seller shall take no action to either collect or change the address to which such Accounts Receivable are sent for ninety (90) days from and after the Closing Date plus five (5) business days immediately after the expiration of ninety (90) days from and after the Closing Date. During the ninety (90) days from and after the Closing Date Buyer agrees to use Buyer's reasonable business efforts to collect all the Accounts Receivable but shall not be required to take legal action with respect to them. In the event that the Accounts Receivable are not fully collected within ninety (90) days from and after the Closing Date, the Buyer shall have one and only one opportunity and option to purchase all, or any portion of such uncollected Accounts Receivable as the Buyer shall desire by tendering to the order of the Seller 80% of the face value of such uncollected Accounts Receivable by tendering cash to the Seller representing such amount so purchased within five (5) business days immediately after the expiration of ninety (90) days from and after the Closing Date. In the event that the Buyer does purchase all or any portion of such uncollected Accounts Receivable as the Buyer shall desire by tendering to the order of the Seller 80% of the value of such uncollected Accounts Receivable within five (5) business days immediately after the expiration of ninety (90) days from and after the Closing Date, the Seller shall then transfer, assign and convey all of Seller's right, title and interest in and to such uncollected Accounts Receivable for which the Buyer shall have paid Seller pursuant to this Article. For any Accounts Receivable that Buyer does not pay Seller pursuant to this Article, the Seller shall be free to change the address to which such Accounts Receivable are sent and to collect such uncollectible Accounts Receivable as Seller sees fit after the expiration of the time limits set by this Article.

**XXXIII. Indemnities of the Parties.** The parties hereby agree as follows:

A.      Notwithstanding the Closing and any subsequent transfers, dissolution, or incorporation of Seller, and regardless of any investigation made at any time by or on behalf of the Buyer, each of Seller and the Individuals, jointly and severally agrees to and does indemnify and hold harmless Buyer and Buyer's employees, agents and assigns from and against any and all liabilities, claims, damages, taxes, actions, demands, losses, costs, penalties, violations of law and expenses, including reasonable attorneys' fees, ("Losses") arising out of or in any way relating to (i) Seller's and/or the Individual's acts or omissions relating to Seller's Business that occurred on or prior to the Closing Date, including to mean an indemnification for the negligent acts of the Seller, Seller's employees or agents, or resulting from (ii) any misrepresentation or breach of warranties contained herein or in the Exhibits attached hereto or (iii) any material default by Seller or the Individuals in the performance of the covenants and agreements made by Seller or the Individuals herein or in the Exhibits attached hereto, save and except only the liabilities, if any, that the Buyer has expressly assumed pursuant to this Agreement.

B.      Buyer agrees to indemnify and hold harmless Seller, its employees and agents from and against any and all Losses arising out of Buyer's acts or omissions relating to the Business that occurred subsequent to the Closing Date, including to mean an indemnification for the negligent acts of the Buyer. Buyer shall further indemnify Seller against any and all Losses resulting from any misrepresentation or breach of warranties contained herein or any material default by Buyer in the performance of the covenants and agreements made by Buyer herein or in the Exhibits attached hereto.

C.      If any party entitled to indemnification pursuant to this Article (the "Indemnified Party") receives notice of any third-party claim or commencement of any third-party action or

proceeding (an "Asserted Liability") with respect to which any party obligated to make indemnification pursuant to this Article (an "Indemnifying Party") is obligated to provide indemnification, the Indemnified Party will promptly give all Indemnifying Parties notice thereof. The Indemnified Party's failure so to notify an Indemnifying Party will not cause the Indemnified Party to lose its right to indemnification under this Article, except to the extent that the failure materially prejudices the Indemnifying Party's ability to defend against an Asserted Liability that the Indemnifying Party has the right to defend against under this Article (and except as otherwise set forth in this Article). The notice must describe the Asserted Liability in reasonable detail, and if practicable will indicate the amount (which may be estimated) of the losses that have been or may be asserted by the Indemnified Party. Each of the Indemnifying Parties may defend against an Asserted Liability on behalf of the Indemnified Party utilizing counsel reasonably acceptable to the Indemnified Party, unless (i) the Indemnified Party reasonably objects to such defense on the grounds that counsel for the Indemnifying Parties cannot represent both the Indemnified Party and the Indemnifying Parties because the representation would be reasonably likely to result in a conflict of interest or because defenses may be available to the Indemnified Party that are not available to the Indemnifying Parties, (ii) the Indemnifying Party is not capable (by reason of insufficient financial capacity, bankruptcy, receivership, liquidation, managerial deadlock, managerial neglect, or similar events) of maintaining a reasonable defense of the action or proceeding, or (iii) the action or proceeding seeks injunctive or other equitable relief against the Indemnified Party.

D.      An Indemnifying Party who defends an Asserted Liability will do so at its own expense and will not be responsible for the costs of defense, investigation, attorney's fees, or other expenses incurred to defend the Asserted Liability (collectively, "Defense Costs") of the Indemnified Party (which may continue to defend, at its own expense). If the Indemnified Party assumes the defense of an Asserted Liability by reason of clauses (i), (ii) or (iii) of the immediately preceding paragraph, because the Indemnifying Party has not elected to assume the defense, then the Indemnifying Party will indemnify the Indemnified Party for its Defense Costs. However, the indemnifying parties will not be liable for the costs of more than one counsel for all indemnified parties in any one jurisdiction. An Indemnifying Party may settle any Asserted Liability only with the consent of the Indemnified Party, which will not be withheld unreasonably.

E.      The parties will cooperate with each other with respect to the defense of any claims or litigation made or commenced by third parties after the date of this Agreement with respect to which indemnification is not available (for any reason) under this Article. However, the party requesting cooperation must reimburse the other party for the other party's reasonable out-of-pocket costs and expenses of cooperating.

F.      Notwithstanding anything contained in this Agreement to the contrary, no party to this Agreement shall be required to indemnify any other party with respect to any liability, obligation or loss unless the amount of such liability, obligation or loss, when aggregated with all other liabilities, obligations, and/or losses sustained by the party to be indemnified, shall equal or exceed Five Thousand Dollars ($5,000.00), at which time claims may be asserted by the indemnified party against any indemnifying party for all liabilities, obligations, and/or losses sustained without any deduction for the Five Thousand Dollar ($5,000.00) limit stated above (this $5,000.00 amount shall act as a threshold to discourage the pursuing of insubstantial claims). However this $5,000.00 threshold amount shall never apply to breaches of

representations relative to title, taxes and authority to consummate the transactions contemplated by this Agreement. Moreover, notwithstanding anything contained in this Agreement to the contrary, in no event shall an indemnifying party's obligations under this Article VIII exceed, in the aggregate, the sum of Seven Hundred Fifty Thousand Dollars ($750,000.00) except that the limitations set forth in this Section shall not apply in instances of Losses resulting from any intentional misrepresentations or fraud.

**XXXIV. Set-off.** The Buyer shall have the right to set-off and apply against all amounts due and owing under any agreement between Buyer and Seller all sums in respect of which the Seller may be liable as a result of a breach of any representation or warranty contained in this Agreement, or pursuant to the indemnification agreement contained in this Agreement or with respect to any other provision of this Agreement, such right of set-off to be in addition to and not in lieu of or an election against any and all other remedies available to the Buyer at law or in equity. When exercising its right of set-off under this Section, Buyer agrees that Buyer will act in good faith and will not exercise the right of set-off with respect to frivolous or specious claims.

**XXXV. Environmental Audit.** The Seller and Buyer have been advised that in purchase and sale transactions a Phase I Environmental Audit regarding the physical assets and the business premises of the Business is customarily performed by the Buyer and/or the Seller. Nevertheless, each has decided not to have a Phase I environmental audit performed.

**XXXVI. Settlement of Disputes.** If a dispute arises out of or relates to this Agreement (for the purposes of this Article, the term "Agreement" shall mean to include any of the Exhibits to this Agreement), or if a party alleges any breach, termination, repudiation, or default of this Agreement, the parties shall first, in good faith, attempt to negotiate a settlement of that dispute, breach or default. If the dispute, breach, termination, repudiation or default cannot be settled through negotiation, the parties agree and shall proceed to binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association under the Federal Arbitration Act, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Discovery shall be as permitted by the Texas Rules of Civil Procedure and the Texas Civil Practices and Remedies Code. Any provisional remedy (including injunctive relief) that a party to this Agreement may want to elect, shall be available notwithstanding the provisions relating to arbitration of disputes. Any party may seek such provisional remedy from the appropriate court of law pending arbitration, and such proceeding in which the provisional remedy was sought will then be stayed pending the final award of the arbitration. The expenses of arbitration conducted pursuant to this paragraph shall be borne by the parties in such proportions as the arbitrator(s) shall decide.

**XXXVII. Entire Agreement.** This Agreement and the Exhibits hereto and the documents, instruments and schedules referred to herein, embody the entire agreement and understanding of the parties hereto in respect of the subject matter contained herein. There are no restrictions, promises, representations, warranties, covenants, or undertakings other than those expressly set forth or referred to herein. This Agreement supersedes all prior agreements and understandings between the parties with respect to such subject matter.

**XXXVIII. Facsimile Execution.** The parties hereby agree that a facsimile copy of this Agreement will be deemed an original for all purposes, and each party hereby waives the necessity of providing the original copy of this Agreement to bind the other.

**XXXIX. Counterpart Execution.** This Agreement may be executed in multiple counterparts, each of which shall be an original, but which shall together constitute but one agreement.

IN WITNESS WHEREOF, the parties have signed this Agreement to be effective on .

**SELLER:**
Integrated Partners, Inc.

By: _____
John P. Barnett, President

**BUYER:**
The Burks Group, Inc.

By: _____
Brian Burks, President

**THE INDIVIDUAL:**

_____
John P. Barnett

**THE GUARANTOR:**

_____
Brian Burks

The undersigned Spouse of the above named Individual hereby signs below to evidence her knowledge of and consent to the terms and conditions hereof.

_____N/A_____

# EXHIBIT LIST

Exhibit "A" -- Promissory Note

Exhibit "B" -- Security Agreement

Exhibit "C" -- UCC Financing Statement

Exhibit "D" – Guaranty

Exhibit "E" -- Bill of Sale

Exhibit "F" -- Corporate Resolution of the Seller

Exhibit "G" -- Affidavit as to Debts and Liens

Exhibit "H" – Contracts

Exhibit "I" -- Corporate Resolution of the Buyer

Exhibit "J" -- Letter Pursuant to State Bar Rule 1.07

Exhibit "K" -- Withdrawal of Assumed Name Certificate

Exhibit "L" -- Assumed Name Certificate

Exhibit "M" -- Covenant Not To Compete

Exhibit "N" -- Assignment and Assumption Agreement

# NOTE

### (Secured by Security Agreement)

Date:        August 21st, 2009

Maker:       The Burks Group, Inc.

Payee:       Integrated Partners, Inc.

Place for Payment (include county):  1225 Lausanne Avenue, Dallas, Dallas County, Texas 75208

Principal Amount:    ONE HUNDRED THOUSAND AND NO/100 DOLARS ($100,000.00)

Annual Interest Rate on Unpaid Principal from Date of Funding: FIVE PERCENT (5%)

Terms of Payment (principal and interest):  Principal and interest shall be due and payable in monthly installments of FOUR THOUSAND THREE HUNDRED EIGHTY-SEVEN AND 14/100 DOLLARS ($4,387.14), or more, each, payable on the 21st, day of each and every calendar month, beginning September 21st, 2009, and continuing regularly thereafter until the whole of said sum, with interest, has been duly paid, interest being calculated on the unpaid principal balance to the date of each installment paid and the payment made credited first to the discharge of interest accrued and the balance to the reduction of the principal.

Annual Interest Rate on Matured, Unpaid Amounts:  The highest rate allowed by law

Security for Payment:

A security interest created and granted in the following security agreement:

Date: August _21_, 2009

Debtor:  The Burks Group, Inc.

Secured Party:  Payee herein

County where collateral located:  County, Texas

Collateral:  All of the assets, both tangible and intangible, of that business owned by Seller, d/b/a "Integrated Partners," primarily located at 1508 East Belt Line Road, Suite 205, Carrollton, Dallas County, Texas 75006, but wherever located, including but not limited to all personal property at the above location, furniture, fixtures, office supplies, equipment, stationery, merchandise for resale, unemployment tax experience rate, right to present telephone number(s), right to present post office box(es), intellectual property rights, any rights to an internet name or "domain name," any rights to an interenet website address, all trade names, work in progress, transferable permits, leases, franchises, equity in leased property, deposits, prepayments, signs, advertising materials, all supplies on hand, customer list, manuals, training aids, computers, software and goodwill, meaning hereby to include everything used in or about the above referenced premises and all additions, accessions and the proceeds therefrom.

Other security for payment:  The personal guaranty of Brian Burks

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above.  All unpaid amounts shall be due by the final scheduled payment date.

On default in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, this note and all obligations in all instruments securing or collateral to it shall become immediately due at the election of Payee. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protest, and notices of protest.

If this note or any instrument securing or collateral to it is given to an attorney for collection or enforcement, or if suit is brought for collection or enforcement, or if it is collected or enforced through probate, bankruptcy, or other judicial proceeding, then Maker shall pay Payee reasonable attorney's fees in addition to other amounts due. Reasonable attorney's fees shall be 10.0% of all amounts due unless either party pleads otherwise.

Nothing in this note shall authorize the collection of interest in excess of the highest rate allowed by law.

Maker reserves the right to prepay the outstanding principal balance of this Note, in whole or in part, at any time and from time to time, without premium or penalty. Any such pre-payment shall be made together with payment of interest accrued on the amount of principal being prepaid through the date of such prepayment, and shall be applied to the installments of principal due hereunder in the inverse order of maturity.

Each Maker is responsible for the entire amount of this note.

The terms Maker and Payee and other nouns and pronouns include the plural if more than one.

Maker shall not be deemed to be in default of this note, unless and until Maker shall have been given seven (7) days written notice and opportunity to cure such default, via certified mail return receipt requested. Notwithstanding the foregoing, Maker shall not be entitled to nor afforded such notice and opportunity to cure more than two (2) times in any one calendar year.

This note and all liens and security interests to the benefit of Payee, including but not limited to the liens and security interests created by any security agreement securing this note are and shall be and remain secondary, subordinate and inferior to all current and future liens and security interests in and to the Collateral to secure the payment of the loan described as follows:

1. Payee: Wells Fargo Bank
2. Maker: The Burks Group, Inc.
3. Date: August 17th, 2009
4. Original Principal Amount: $100,000.00

The Burks Group, Inc.

By: /S/

Brian Burks, President
MAKER

## SECURITY AGREEMENT
### (Consumer Goods, Equipment and Farm Products)

THE STATE OF TEXAS   )
                              )     KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF DALLAS     )

That The Burks Group, Inc., whose address is 3173 Williamsburg, Port Neches, Texas 77651, hereinafter called "Debtor" (whether one or more, hereby GRANTS to Integrated Partners, Inc., whose address is 1225 Lausanne Avenue, Dallas, Texas 75208, hereinafter called "Secured Party" (whether one or more), a security interest in the following described personal property now located and situated at: , Texas, together with all additions and accessions thereto (in the event such property be livestock, then together with the increase, if any, therefrom), and proceeds thereof (the inclusion of such proceeds does not authorize Debtor to sell, dispose of or otherwise use the Collateral in any manner not authorized by this agreement), all hereinafter called the "Collateral", to-wit:

All of the assets, both tangible and intangible, of that business owned by Seller, d/b/a "Integrated Partners," primarily located at 1508 East Belt Line Road, Suite 205, Carrollton, Dallas County, Texas 75006, but wherever located, including but not limited to all personal property at the above location, furniture, fixtures, office supplies, equipment, stationery, merchandise for resale, unemployment tax experience rate, right to present telephone number(s), right to present post office box(es), intellectual property rights, any rights to an internet name or "domain name," any rights to an interenet website address, all trade names, work in progress, transferable permits, leases, franchises, equity in leased property, deposits, prepayments, signs, advertising materials, all supplies on hand, customer list, manuals, training aids, computers, software and goodwill, meaning hereby to include everything used in or about the above referenced premises and all additions, accessions and the proceeds therefrom, which Collateral is of the following classification(s):

[ ]    Consumer Goods                [ ]    Equipment (Farm Use)

[x]    Equipment (Business Use)      [ ]    Farm Products

[x]    Accounts                       [x]    Intangibles

and which Collateral is to be wholly or partly affixed to real estate or other goods, a description of which real estate or other goods is as follows: (if not to be so affixed, insert the word "None"): NONE

This security interest is to secure the payment of an indebtedness owing by Debtor to Secured Party and evidenced by that one certain promissory note, dated of even date herewith, in the original principal sum of ONE HUNDRED THOUSAND AND NO/100 DOLARS ($100,000.00) executed by Debtor, payable to the order of Secured Party as follows: As therein provided, and bearing interest as therein stipulated, providing for acceleration of maturity and for attorney's fees; and to secure all renewals and extensions of all or any part of said indebtedness hereby secured.

Debtor warrants, covenants, represents and agrees as follows:

(1)     That Debtor is the full owner of said Collateral and has authority to grant this security interest therein; that no Financing Statement is on file covering the Collateral or its proceeds; and except for the security interest granted hereby, there is no lien or encumbrance in or on the Collateral, unless otherwise expressly stated herein.

(2)     That Debtor's residence is the address shown at the beginning hereof, and Debtor will immediately notify Secured Party in writing of any change of such residence.

(3)     That, except in the ordinary course of business, the Collateral will not be sold, transferred, rented, leased, pledged, made subject to a security agreement, or removed from its present location above named without the written consent of Secured Party and that the Collateral will not be misused or abused, wasted or allowed to deteriorate, except for ordinary wear and tear from its intended use. The Collateral shall remain in Debtor's possession or control at all times at Debtor's risk of loss.

(4)     That the Collateral will be used primarily for the classification of use above stated, and for no other use without the written consent of Secured Party. The Collateral will not be affixed to any real estate or other goods so as to become a fixture on real estate or accession to other goods, unless such real estate or other goods be described hereinabove; if said Collateral is to be so affixed, Debtor will upon demand of Secured Party furnish written consent or consents to the security interest hereby created or disclaimer or disclaimers signed by all persons having an interest in the real estate or other goods.

(5)     That Debtor hereby authorizes the filing of any Financing Statement or other document or procure any documents and pay all connected costs, necessary to protect the security interest granted hereby against the rights or interests of third persons.

(6)     That Debtor will protect the title and possession of the Collateral and will pay promptly, when due and before becoming delinquent, all taxes and assessments now existing or hereafter levied or assessed against said Collateral or any part thereof, and will keep said Collateral insured, if insurable, to the extent of the original amount of the indebtedness hereby secured or to the full insurable value of said Collateral, whichever is the lesser, against loss or damage by fire, windstorm and theft and any other hazard or hazards as may be reasonably required from time to time by Secured Party, in such form and with such insurance company or companies as may be approved by Secured Party and will deliver to Secured Party the policies of such insurance, having attached thereto such mortgage indemnity clause as Secured Party shall direct, and will deliver renewals of such policies to Secured Party at least ten (10) days before any such insurance policies expire; any sums which may become due under any such policy, or policies, may be applied by Secured Party, at his option, to reduce said indebtedness, whether due or not, or Secured Party may permit Debtor to use said sums to repair or replace all Collateral damages or destroyed and covered by such insurance.

In the event Debtor shall fail to keep said Collateral in good repair and condition, or to pay promptly when due all taxes and assessments, as aforesaid, or to preserve the prior security interest hereby granted in said Collateral, or to keep said Collateral insured, as aforesaid, or to deliver the policy or policies of insurance or the renewal thereof to Secured Party, as aforesaid, then Secured Party may, at his option, but without being required to do so, make such repairs, pay such taxes and

assessments, remove any prior liens or security interests and prosecute or defend any suits in relation to the prior security interest of this agreement in said Collateral, or insure and keep insured said Collateral in an amount not to exceed that above stipulated; that any sum which may be so paid out by Secured Party and all sums paid for insurance premiums, as aforesaid, including the costs, expenses and attorney's fees paid in any suit affecting said Collateral when necessary to protect the security interest hereof shall bear interest from the dates of such payments at the highest rate stated in said note or notes and shall be paid by Debtor to Secured Party upon demand, at the same place at which said note or notes are payable and shall be part of the indebtedness hereby secured and recoverable as such in all respects.

Debtor shall be in default under this Security Agreement upon the happening of any of the following events or conditions (herein called an "**Event of Default**"):

(1)     Debtor's failure to pay when due, or declared due, the indebtedness hereby secured, or any installment thereof, principal or interest;

(2)     Debtor's default in the punctual performance of any of the obligations, covenants, terms or provisions contained herein or in the note or notes hereby secured;

(3)     If any warranty, covenant or representation made herein by Debtor proves to have been false in any material respect when so made;

(4)     Debtor's dissolution, termination of existence, insolvency or business failure, or Debtor making an assignment for the benefit of creditors or the commission of an act of bankruptcy, or the institution of voluntary or involuntary bankruptcy proceedings, or the taking over of the Collateral or any part thereof by a Receiver for Debtor or the placing of same in the custody of any court or an officer or appointee thereof;

(5)     Loss, theft, substantial damage, destruction, sale, abandonment or encumbrance of or to the Collateral or any part thereof, provided however, that in the event of any loss, theft, substantial damage, destruction, and/or sale of the collateral, in the event that such Collateral is immediately replaced with Collateral of equal or greater value, such, loss, theft, substantial damage, destruction, and/or sale shall not be deemed an event of default.

(6)     Default by the Debtor in any of the material terms or conditions of the real property lease for the business premises where the Collateral is located.

Upon the occurrence of an Event of Default, and at any time thereafter, Secured Party may elect, Debtor hereby expressly waiving notice, demand and presentment, to declare the entire indebtedness hereby secured immediately due and payable.

In the event of default in the payment of said indebtedness when due or declared due, Secured Party, without waiving any rights and remedies of a Secured Party under the Uniform Commercial Code of Texas, shall have the right to require Debtor to assemble the Collateral and make it available to Secured Party at a place to be designated by Secured Party which is reasonably convenient to both Parties, and the right to take immediate possession of any and all of the Collateral and for the purpose shall have the right to enter upon the premises where said Collateral may be located and remove the same or may leave the same where it is then located, and sell the Collateral or such part thereof as Secured Party may elect (without exhausting the power to sell the remainder

or any part thereof at Public Sale as herein provided or at Public or Private Sale as provided in the Uniform Commercial Code of Texas) at Public Sale to the highest bidder for cash at the Courthouse door of the County hereinabove stated where the Collateral is now located, after having first given notice of the time, place and terms of such Public Sale by posting a written or printed notice (which notice shall also show the then location of the Collateral to be sold) of said sale at the Courthouse door of said County, at least ten days before the day of sale and after sending reasonable notice to Debtor and to such other person or persons legally entitled thereto under the Uniform Commercial Code of Texas, of the time and place of the Public Sale; the Collateral to be sold may be sold as an entirety or in such parcels as Secured Party may elect and it shall not be necessary for Secured Party to have actual possession of the Collateral or to have it present when the sale is made, but full and perfect title shall pass wheresoever said Collateral may then be, and Secured Party thus selling said Collateral shall deliver to the purchaser thereof a Bill of Sale or Transfer therefor, binding Debtor to warrant and forever defend the title to such Collateral, and out of the proceeds of the sale pay the reasonable expenses of retaking, holding, preparing for sale, selling and the like, reasonable attorney's fees and legal expenses so incurred by Secured Party, and the balance remaining shall thereupon be applied toward the payment of the amount then owing on the indebtedness hereby secured, including principal, interest and attorney's fees as provided herein and in said Note, rendering the balance, if any, and surplus, if any, to the person or persons legally entitled thereto under the Uniform Commercial Code of Texas, but if there be any deficiency, Debtor shall remain liable therefor. Secured Party shall have the right to purchase at such Public Sale, being the highest bidder. The recitals in the Bill of sale or Transfer to the purchaser at such sale shall be prima facie evidence of the truth of the matters therein stated and all prerequisites to said sale required hereunder and under the Uniform Commercial Code of Texas shall be presumed to have been performed.

Secured Party, in addition to the rights and remedies provided for in the preceding paragraph, shall have all the rights and remedies of a Secured Party under the Uniform Commercial Code of Texas and Secured Party shall be entitled to avail himself of all such other rights and remedies as may now or hereafter exist at law or in equity for the collection of said indebtedness and the enforcement of the covenants herein and the foreclosure of the security interest created hereby and the resort to any remedy provided hereunder or provided by the Uniform Commercial Code of Texas, or by any other law of Texas, shall not prevent the concurrent or subsequent employment of any other appropriate remedy or remedies.

The requirement of reasonable notice to Debtor of the time and place of any Public Sale of the Collateral or of the time after which any Private Sale, or any other intended disposition thereof is to be made, shall be met if such notice is mailed, postage prepaid, to Debtor at the address of Debtor designated at the beginning of this Security Agreement, at least five days before the date of any Public Sale or at least five days before the time after which any Private Sale or other disposition is to be made.

Secured Party may remedy any default, without waiving same, or may waive any default without waiving any prior or subsequent default.

The security interest herein granted shall not be affected by nor affect any other security taken for the indebtedness hereby secured, or any part thereof; and any extensions may be made of the indebtedness and this security interest and any releases may be executed of the

Collateral, or any part thereof, herein conveyed without affecting the priority of this security interest or the validity thereof with reference to any third person, and the holder of said indebtedness shall not be limited by any election of remedies if he chooses to foreclose this security interest by suit. The right to sell under the terms hereof shall also exist cumulative with said suit; and one method so resorted to shall not bar the other, but both may be exercised at the same or different times, nor shall one be a defense to the other

The pronouns used in this agreement are in the masculine gender but shall be construed as feminine or neuter as occasion may require. "Secured Party" and "Debtor" as used in this agreement include, shall bind and shall inure to the benefit of the respective heirs, executors or administrators, successors, representatives, receivers, trustees or assigns of such parties. If there be more than one Debtor, their obligations shall be joint and several.

The law governing this secured transaction shall be the Uniform Commercial Code of Texas and other applicable laws of the State of Texas. All terms used herein which are defined in the Uniform Commercial Code of Texas shall have the same meaning herein as in said Code.

The security interest granted herein is a purchase money security interest.

All current and future liens and security interests of Secured Party in and to the Collateral, including but not limited to the liens and security interests created by this instrument are and shall remain secondary, subordinate and inferior to all current and future liens and security interests in and to the Collateral to secure the payment of the loans evidenced by the following:

1.  Payee:       Wells Fargo Bank
2.  Maker:       The Burks Group, Inc.
3.  Date:        August 17th, 2009
4.  Original Principal Amount:   $100,000.00

Debtor hereby expressly agrees that default by the Debtor in any of the terms or conditions of the above-described note in the immediately preceding paragraph, or in any of the documents or agreements securing same, shall also, constitute an Event of Default under the terms and conditions of this security agreement and the note hereby secured.

EXECUTED to be effective on August 21, 2009.

Secured Party:                          Debtor:

Integrated Partners, Inc.               The Burks Group, Inc.


By:_____             By:_____
John P. Barnett, President              Brian Burks, President


*SECURITY AGREEMENT (Consumer Goods, Equipment, Farm Products Receivable and Intangibles))*    *Page 5*

# GUARANTEE

For value received, I, Brian Burks, do hereby guarantee the payment of the Promissory Note in the original principal amount of ONE HUNDRED THOUSAND AND 00/100 DOLLARS ($100,000.00) dated August , 2009, wherein The Burks Group, Inc. and Integrated Partners, Inc. is Payee, according to the terms thereof, both as to interest and as to principal, and I do hereby waive all demands, all notices, including the notice of intention to accelerate the maturity thereof, notices of acceleration of the maturity thereof, notice of nonpayment, presentment for payment, protest, notice of protest, suit, diligence and any notice of, or defense on account of the extension of the time of payments or change in the method of payments and consent to any and all renewals and extensions in the time of payment thereof. This GUARANTEE shall be binding on the Guarantor and the heirs, executors and administrators of the Guarantor.

It is agreed and understood by Guarantor that should the status of the Maker of the Promissory Note change, this GUARANTEE shall continue and also cover the indebtedness of the Maker under the new status, according to the terms hereof, guaranteeing payment of the indebtedness of the original Maker.

Guarantor waives notice of acceptance of this GUARANTEE and notice of any and all liability to which it may apply, and waives presentment, demand of payment, protest, notice of dishonor, or non-payment of any such indebtedness, suit, or taking of any other action by said Payee against either the Maker or any Guarantor, and any other notice to any party liable thereon. Each Guarantor further waives all rights under Chapter 34 of the Texas Business and Commerce Code.

This GUARANTEE shall be deemed to extend to any and all indebtedness (inclusive of costs, expenses and attorney's fees) of the above-referenced Maker to the above-referenced Payee, regardless of the amount and regardless of when or how incurred, and this GUARANTEE shall continue to extend to any and all such future indebtedness until notice of cancellation is actually received by the Payee referenced above, certified mail, return receipt requested, and such cancellation, if any, shall only then be effective to cancel the guaranty of indebtedness incurred by the Maker referenced above after the date of receipt of the notice referenced above. Notwithstanding the foregoing, no cancellation shall apply to the guaranty of any costs, expenses and attorney's fees.

It is agreed and understood by Guarantor that said Payee shall not be required to pursue any other remedies before invoking the terms of this GUARANTEE. No delay on the part of the Payee in exercising any options, powers, or rights, or partial or single exercise thereof, shall constitute a waiver thereof. No waiver of any rights hereunder, and no modification or amendment of this GUARANTEE, shall be deemed to be made by the Payee unless the same shall be in writing, duly signed on behalf of said Payee and said Guarantor, and each such waiver, if any, shall apply only with respect to the specific instance involved, and shall in no way impair the rights of the Payee or the obligations of Guarantor to the Payee in any other respect at any other time.

No invalidity, irregularity, or unenforceability of all or any part of said indebtedness hereby guaranteed shall affect, impair, or be a defense to this GUARANTEE, and this GUARANTEE is a primary obligation of the Guarantor.

This is a continuing and unconditional GUARANTEE and all indebtedness to which it applies or may apply pursuant to the terms hereof shall be conclusively presumed to have been

created in reliance hereon. In the event of the death of any Guarantor hereunder, the obligation of the deceased shall continue in full force and effect against his estate as to all indebtedness which shall have been created or incurred by the Maker prior to the time when the Payee shall have received notice, in writing, of such death. This GUARANTEE shall, from the date of such death as to all indebtedness created, incurred, or arising after such death, remain and continue in full force as a guaranty by the surviving Guarantors.

Guarantor acknowledges that Payee would not extend credit to Maker, but for this GUARANTEE. Guarantor further acknowledges and represents that Guarantor will benefit by such extension of credit to Maker.

This GUARANTEE and the rights and obligations of the Payee and of the Guarantor shall be governed and construed in accordance with the laws of the State of Texas, and it is further agreed that this GUARANTEE is performable in Dallas County, Texas, and Guarantor waives the right to be sued elsewhere and agrees to abstain from filing suit in any other county and will not request a change of venue to any other county.

This GUARANTEE shall inure to the benefit of the Transferee, assignee, or holder of the note hereby secured; however, all indebtedness to the Payee shall first be paid in full, before the assignee of any debt guaranteed shall receive any benefit of this GUARANTEE.

SIGNED TO BE EFFECTIVE ON August 21st, 2009.


_____
Brian Burks
GUARANTOR

# BILL OF SALE

Date: August 21st, 2009

Seller: Integrated Partners, Inc.

Seller's Mailing Address (including county): 1225 Lausanne Avenue, Dallas, Dallas County, Texas 75208

Buyer: The Burks Group, Inc.

Buyer's Mailing Address (including county): 3173 Williamsburg, Port Neches, Jefferson County, Texas 77651

Consideration: Ten Dollars ($10.00) and other good and valuable consideration.

Personal Property: All of the assets, both tangible and intangible, of that business owned by Seller, d/b/a "Integrated Partners," primarily located at 1508 East Belt Line Road, Suite 205, Carrollton, Dallas County, Texas 75006, but wherever located, including but not limited to all personal property at the above location, furniture, fixtures, office supplies, equipment, stationery, merchandise for resale, unemployment tax experience rate, right to present telephone number(s), right to present post office box(es), intellectual property rights, any rights to an internet name or "domain name," any rights to an interenet website address, all trade names, work in progress, transferable permits, leases, franchises, equity in leased property, deposits, prepayments, signs, advertising materials, all supplies on hand, customer list, manuals, training aids, computers, software and goodwill, meaning hereby to include everything used in or about the above referenced premises, including but not limited to those items listed in Schedule "A" attached hereto and incorporated herein by reference, and specifically excluding those items listed in Schedule "B" attached hereto and incorporated herein by reference.

For value received Seller sells and delivers the personal property to Buyer and warrants and agrees to defend title to the personal property to Buyer and Buyer's successors against all lawful claims.

When the context requires, singular nouns and pronouns include the plural.

The personal property sold and delivered to the Buyer is subject to and secured by a vendor's lien in favor of the Seller granted by the Buyer dated of even date herewith and shall be subject to and secured by such vendor's lien until the payment, in full, of the Note(s) thereby secured.

**SELLER:**
**SELLER:**
Integrated Partners, Inc.

By: _____
John P. Barnett, President

## ACKNOWLEDGMENT

THE STATE OF TEXAS     )
           )
COUNTY OF DALLAS     )

   This instrument was acknowledged before me on August 21st, 2009, by Integrated Partners, Inc., John P. Barnett, President.



John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

NOTARY PUBLIC in and for the
State of Texas

*BILL OF SALE*

SCHEDULE "A"

ASSETS INCLUDED IN SALE

**INTEGRATED PARTNERS, INC.**
**ASSET LIST:**


OKI  C5150    Laser printer

OKI  320 Turbo (form printer)

HP Office Jet K60 printer

Panasonic KX FP80 fax machine

1 executive desk
1 executive desk chair
1 task chair
3 office chairs

1 four drawer metal file cabinet

5 folding tables
1 table with casters

1 tabletop refridgerator
1 paper shredder

tracking software
13 cell phones

200 + lockboxes

# SCHEDULE B

## EXCLUDED ASSETS

**INTEGRATED PARTNERS, INC.**
**ASSET LIST:**

1. Cash on hand or in financial institutions and other cash equivalents;

2. Accounts receivable;

3. Security deposits, if any, for utilities, etc.;

4. Corporate records; and

5. Tax records.

6. Seller's Indirect Air Carrier Certificate issued by the U.S. Department of Homeland Security.





<strong>RESOLUTIONS ADOPTED BY UNANIMOUS<br>WRITTEN CONSENT OF THE<br>SHAREHOLDERS AND DIRECTORS<br>OF<br>INTEGRATED PARTNERS, INC.</strong>

We, the undersigned Shareholders and Directors of Integrated Partners, Inc., a corporation duly organized under the laws of the State of Texas, do by this writing, consent to take the following actions and adopt the following resolutions:

WHEREAS, we hereby find that it is in the best interest of this corporation to acknowledge, ratify and approve the acts of the President of this corporation in entering into an agreement to sell substantially all of the assets of this corporation operating under the name "Integrated Partners" pursuant to that one certain Asset Purchase Agreement (the "Agreement") entered into on even date herewith by and among Integrated Partners, Inc., 1225 Lausanne Avenue, Dallas, Texas 75208, therein referred to as "Seller," The Burks Group, Inc., 3173 Williamsburg, Port Neches, Texas 77651, therein referred to as "Buyer," John P. Barnett, therein referred to as the "Individual" and Brian Burks, therein referred to as the "Guarantor" and to make certain resolutions with respect thereto.

THEREFORE, IT IS RESOLVED, that the above-referenced Agreement is hereby acknowledged, ratified and approved.

RESOLVED FURTHER, that the acts of the President of this corporation in entering into such Agreement are hereby ratified and approved including the execution of any and all documents which were or are necessary and proper to effectuate the transfer of such assets of this corporation to the Buyer. By this, it is the intent of this corporation to authorize, ratify and approve the execution of any Bills of Sale, covenants not to compete, warranties, representations, releases, affidavits and any and all other documents necessary and proper which attend to the Agreement, as the President of this corporation, in his discretion reasonably deems or have deemed necessary.

RESOLVED FURTHER, to the extent that the terms, conditions, representations and obligations of this corporation may conflict with the terms of any agreement to which the corporation and/or its shareholders is/are a party(ies), or to which the corporation's assets are subject, it is recommended each such agreement be amended accordingly, for this one transaction only and the Directors of this corporation hereby authorize, ratify and approve such amendment.

RESOLVED FURTHER, that the terms and conditions of said Agreement shall be binding upon and inure to the benefit of the corporation.

We direct that this Unanimous Consent be filed with the minutes of the proceedings of the Shareholders and the Directors of this corporation.

This consent is executed pursuant to Article 9.10(A) and (B) of the Texas Business Corporation Act and the By-Laws of this corporation that authorizes the taking of action by the Shareholders and Directors of this corporation by Unanimous Written Consent Without a Meeting.

This consent may be executed in one or more counter-parts, all of which shall be considered one and the same instrument.

DATED to be effective on August ___21___, 2009.

 

 

_____
John P. Barnett
Shareholder/Director

# AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared , Individually, who after being by me duly sworn, deposed and stated as follows:

"Your Affiant is over the age of EIGHTEEN (18), has never been convicted of a crime of moral turpitude, is of sound mind and is capable of making this Affidavit by reason of personal knowledge. , is the owner of certain assets which are used in the operation of 's business, d/b/a , located at . , is the Seller of the assets of which are described in the Bill of Sale of even date herewith transferring such assets to , Buyer. , hereby warrants the title to said assets and states that they shall be delivered free and clear of any debts, liens, taxes (including F.I.C.A., payroll, unemployment insurance and sales taxes, without limitation), and any and all other claims, contingent or not, SAVE AND EXCEPT for the indebtedness retained by Seller in such sale and SAVE AND EXCEPT for the following indebtednesses which Buyer did assume:

A prorated portion of personal property taxes;

1.      A prorated portion of the 2009 personal property taxes to the date of this Affidavit;

2.      Cell phone contracts current as of and prorated of the date of this Affidavit.

Seller hereby agrees to indemnify and hold harmless the Buyer, from the claims and demands (genuine or not), including attorneys' fees, of all persons against said Business or Assets which exist at the time of the execution of this Affidavit, with only the exceptions as noted above.

EXECUTED this August 2/ , 2009.

SELLER:
Integrated Partners, Inc.

By:_____

John P. Barnett, President

**THE INDIVIDUAL:**

_____
John P. Barnett

## VERIFICATION

SUBSCRIBED AND SWORN TO BEFORE ME this August 21, 2009, by John P. Barnett, President of Integrated Partners, Inc.


John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

_____
NOTARY PUBLIC in and for the
State of Texas

SUBSCRIBED AND SWORN TO BEFORE ME this August 21, 2009, by John P. Barnett, individually.


John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

_____
NOTARY PUBLIC in and for the
State of Texas

The above referenced Buyer signs below to acknowledge and agree to the liabilities to be assumed by the Buyer as noted above.

**BUYER:**
The Burks Group, Inc.

By: _____
Brian Burks, President

SUBSCRIBED AND SWORN TO BEFORE ME this August 21, 2009, by Brian Burks, President of The Burks Group, Inc.


John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

_____
NOTARY PUBLIC in and for the
State of Texas

**EXHIBIT "H"**

**CONTRACTS**

3 customer contracts with

Hoya Vision Care

Legends 4.0 Optical Lab

Southwest Lens Optical Lab

# RESOLUTIONS ADOPTED BY UNANIMOUS
## WRITTEN CONSENT OF THE
### SHAREHOLDERS AND DIRECTORS
### OF
## THE BURKS GROUP, INC.

We, the undersigned Shareholders and Directors of the Burks Group, Inc., a corporation duly organized under the Texas Business Organization Code, do by this writing, consent to take the following actions and adopt the following resolutions:

WHEREAS, we hereby find that it is in the best interest of this corporation to acknowledge, ratify and approve the acts of the President of this corporation in entering into an agreement to buy substantially all of the assets of a certain courier business operating under the name "Integrated Partners" pursuant to that one certain one certain Asset Purchase Agreement (the "Agreement") entered into on even date herewith by and among Integrated Partners, Inc., 1225 Lausanne Avenue, Dallas, Texas 75208, therein referred to as "Seller," The Burks Group, Inc., 3173 Williamsburg, Port Neches, Texas 77651, therein referred to as "Buyer," John P. Barnett, therein referred to as the "Individual" and Brian Burks, therein referred to as the "Guarantor" and to make certain resolutions with respect thereto.

THEREFORE, IT IS RESOLVED, that the above-referenced Agreement is hereby acknowledged, ratified and approved.

RESOLVED FURTHER, that the acts of the President of this corporation in entering into such Agreement are hereby ratified and approved including the execution of any and all documents which were or are necessary and proper to effectuate the purchase and sale of such assets by this corporation. By this, it is the intent of this corporation to authorize, ratify and approve the execution of the Agreement, any assignment and assumption agreements, covenants not to compete, warranties, representations, releases, affidavits and any and all other documents necessary and proper which attend to the Agreement, as the President of this corporation, in his discretion reasonably deems or have deemed necessary.

RESOLVED FURTHER, to the extent that the terms, conditions, representations and obligations of this corporation may conflict with the terms of any agreement to which this corporation and/or its shareholders is/are a party(ies), or to which this corporation's assets are subject, it is resolved that each such agreement be amended accordingly, for this one transaction only and the Directors of this corporation hereby authorize, ratify and approve such amendment.

RESOLVED FURTHER, that the terms and conditions of said Agreement shall be binding upon and inure to the benefit of the corporation.

We direct that this Unanimous Consent be filed with the minutes of the proceedings of the Shareholders and the Directors of this corporation.

This consent is executed pursuant to Article 21.415 and 6.201 of the Texas Business Organizations Code and the By-Laws of this corporation that authorizes the taking of action by the

Shareholders and Directors of this corporation by Unanimous Written Consent Without a Meeting. This consent may be executed in one or more counter-parts, all of which shall be considered one and the same instrument.

DATED to be effective on August 21st, 2009.

Brian Burks
Shareholder/Director

# CERTIFICATE OF WITHDRAWAL
# FROM USE OF ASSUMED NAME

THE STATE OF TEXAS     *

                             *      KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF DALLAS     *

The undersigned, John P. Barnett, President of Integrated Partners, Inc., executes this Affidavit to evidence the undersigned's withdrawal from the use of the assumed name "Integrated Partners," which name has been used by the undersigned to own and operate a certain business located at 1508 East Belt Line Road, Suite 205, Carrollton, Texas 75006.

The name and address of the owner of such assumed name is as follows:

| Name | Address |
|---|---|
| Integrated Partners, Inc. | 1508 East Belt Line Road<br>Suite 205<br>Carrollton, Texas 75006 |

In the event owner of such assumed name filed an Assumed Name Certificate in Dallas County, Texas, such certificate was filed in Volume _____, Page _____, Assumed Name Records, Dallas County, Texas.

EXECUTED this August 21st, 2009.

Integrated Partners, Inc.

By: _____
John P. Barnett, President

THE STATE OF TEXAS     *

                             *

COUNTY OF DALLAS     *

BEFORE ME, the undersigned authority, on this day personally appeared John P. Barnett, President of Integrated Partners, Inc., known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that this document was executed for the purposes therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this August 21st, 2009.

John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

_____
NOTARY PUBLIC in and for the
State of Texas

## ASSUMED NAME CERTIFICATE FOR AN
## INCORPORATED BUSINESS
*********************

1. The assumed name under which the business or professional services is or will be conducted: "Integrated Partners."

2. The name of the incorporated business or profession as stated in its Articles of Incorporation or comparable document is The Burks Group, Inc., and the Filing Number is 801155056.

3. The state, country, or other jurisdiction under the laws of which it was incorporated is TEXAS the address of its registered office is 3173 Williamsburg, Port Neches, Texas 77651.

4. The period, not to exceed ten (10) years, during which this assumed name will be used is August 21st, 2009 to August 21st, 2019.

5. The corporation is a for profit, business corporation.

6. The corporation is required to maintain a registered office in Texas, the address of the registered office is stated in No. 3. above and the name of its registered agent at such address is Dawn M. Daley. The address of the principal office is 3496 Cumberland Lane, Frisco, Texas 75034.

7. The county or counties where business is being conducted or rendered under such assumed name is Dallas County.

8. If this instrument is executed by the attorney-in-fact, the attorney-in-fact hereby states that he has been duly authorized, in writing, by his principal to execute and acknowledge this instrument.

The Burks Group, Inc.

BY: _____
Brian Burks, President

BEFORE ME on this August 21st, 2009, personally appeared The Burks Group, Inc. by and through its duly authorized president, Brian Burks, and acknowledged to me that he executed the foregoing certificate for the purposes therein expressed and in the capacity therein stated.



John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

_____
NOTARY PUBLIC, State of Texas

# COVENANT NOT TO COMPETE

This Covenant Not to Compete (hereinafter called the "Agreement") is made and given by Integrated Partners, Inc., 1225 Lausanne Avenue, Dallas, Texas 75208, (hereinafter called the "Seller") and John P. Barnett, individually, (the "Individual") for the purposes and consideration hereinafter expressed.

WHEREAS on even date herewith the Seller has sold certain assets (hereinafter called the "Assets") of that on-going business owned by Seller and operated under the trade name "Integrated Partners" located at 1508 East Belt Line Road, Suite 205, Carrollton, Texas 75006 (hereinafter called the "Business") to The Burks Group, Inc., 3173 Williamsburg, Port Neches, Texas 77651 (hereinafter called the "Buyer"); and

WHEREAS, the Seller agreed that Seller and the Individual, jointly and severally, would make a binding covenant not to compete with the Buyer as one of the terms and conditions of the sale of the Business, without which, Buyer never would have purchased the Assets of Seller.

NOW, THEREFORE, Seller and the Individual, jointly and severally covenant and agree that they will not, either directly or indirectly within the State of Texas (the "Market Area"), for a period of three (3) years commencing on even date with this Agreement and ending three (3) years hence, do or engage in any of the following acts:

A.      Within the Market Area for the time period specified:

(1)     Engage in the business of owning (except as the holder of not more than five percent of the stock of any publicly traded corporation), selling and/or operating a business that is a courier or "hot shot" business as a sole proprietor, stockholder, consignor, advisor, consultant, financier, in partnership with others or otherwise.

(2)     Be employed by any person, venture, partnership or other entity and render Seller's and/or the Individual's services in a business that is a courier

or "hot shot" business for Seller's and/or the Individual's profit or the profit of any one else within the proscribed market area.

B.    Within the time period specified:

(1)    Employ, or interfere with the employment of any of the employees of Buyer, whether now employed or hereafter employed.

(2)    Directly or indirectly, jointly or severally, either as principal, agent, employee, employer, stockholder, co-partner, or in any other individual or representative capacity whatsoever induce, solicit or attempt to induce or solicit any existing or future client or customer of Buyer to terminate its relationship with the Buyer either for Seller's own benefit or for the benefit of any other person, firm, or corporation competitive with that of the Buyer;

(3)    Directly or indirectly request or advise any present or future merchandise resource, supply resource, or service resource of the Buyer to withdraw, curtail, or cancel the furnishing or sales of merchandise, supplies, or services to the Buyer; or,

(4)    Directly or indirectly induce or attempt to influence any present or future employee or agent of the Buyer (including sales persons whether or not they are independent contractors, if any) to terminate employment with the Buyer.

The Seller and the Individual further agree that in the event this Agreement is successfully enforced by any court of competent jurisdiction in favor of the Buyer and against the Seller and/or the Individual because of Seller's and/or the Individual's breach thereof, the Buyer shall be entitled to recover Buyer's reasonable attorney's fees and all other costs and expenses in addition to any other relief granted.

The Seller and the Individual understand and agree that the nature of the business in which the Buyer is engaged and in which the Buyer may be engaged during the existence of this agreement make it essential for the protection of the Buyer that this agreement be extended to include the defined market area. The Seller and the Individual expressly agree that the competitive acts restricted, the time and the area of the restriction herein granted are reasonable.

For the enforcement of any of the provisions of this Agreement, the Buyer shall have the rights to specific performance and injunctive relief in the broadest sense necessary to effect the protection and rights which Buyer has acquired under this Agreement. Further that the Seller's and/or the Individual's failure to perform any of the promises set forth herein will cause the Buyer to sustain loss and damage which will be difficult to ascertain and measure, and for which the Buyer will have no adequate remedy at law. It is, therefore, reasonable and necessary that the Buyer be accorded the equitable remedies of specific performance and injunctive relief.

It is the intent of the parties that the provisions contained in this Agreement shall, to the fullest extent permissible under law and public policy, be reasonable and be enforced by the courts of each state and jurisdiction in which enforcement is sought and that the unenforceability (or the modification necessary to conform with such law and public policy) of any part of this Agreement shall not be deemed to render unenforceable any other part of this Agreement. Accordingly, if any part of this Agreement shall be adjudicated to be invalid or unenforceable in any action or proceeding including Seller, Seller's successors or assigns, and/or the Individual, the Individual's heirs, executors, administrators, successors and assigns, and the Buyer or Buyer's heirs, executors, administrators, successors or assigns, whether in its entirety or except as modified as to duration, territory, accounts, employees, or otherwise, then such part shall be deemed deleted or amended, as the case may be, in order to render the remainder of this Agreement both valid and enforceable, in accordance with the spirit and underlying intent of this Agreement. The parties hereby request the trier(s) of fact in any proceeding in which they are involved, to amend or delete provisions of this Agreement in accordance with the spirit and underlying intent of this Agreement as

is deemed necessary by such trier(s) of fact. Any such deletion or amendment shall apply only where the Court rendering the same has jurisdiction.

The Seller and the Individual hereby specifically acknowledge and agree that the time period restricting competition as provided for in this Agreement shall be tolled during the time period of any breach of this Agreement by Seller and/or the Individual.

EXECUTED August 21st, 2009.

**SELLER:**
Integrated Partners, Inc.

By:

John P. Barnett, President

**THE INDIVIDUAL:**

John P. Barnett

BEFORE ME, the undersigned authority, on this day personally appeared John P. Barnett known to me to be the President of Integrated Partners, Inc. whose name is subscribed to the foregoing instrument, and acknowledged to me that such President executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this August 21st, 2009.

John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

Notary Public, State of Texas

BEFORE ME, the undersigned authority, on this day personally appeared John P. Barnett known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this August 21st, 2009.

John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

Notary Public, State of Texas

# ASSIGNMENT AND ASSUMPTION AGREEEMENT

THE STATE OF TEXAS )
                                )       KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF DALLAS )

For and in consideration of the sale and purchase as is described in that one certain Asset Purchase Agreement (the "Agreement") entered into on even date herewith by and among Integrated Partners, Inc., 1225 Lausanne Avenue, Dallas, Texas 75208, therein referred to as "Seller," The Burks Group, Inc., 3173 Williamsburg, Port Neches, Texas 77651, therein referred to as "Buyer," John P. Barnett, therein referred to as the "Individual" and Brian Burks, therein referred to as the "Guarantor" to acquire the assets used in or by the Seller in Seller's courier and "hot shot" business and for other good and valuable consideration, the receipt and sufficiency of which is hereby confessed and acknowledged, Integrated Partners, Inc. ("Assignor"), hereby grants, bargains, sells, transfers, conveys, assigns and delivers to The Burks Group, Inc. ("Assignee), all right, title and interest in and to the agreements described as follows:

All of the Agreements described in Schedule 1 attached hereto and incorporated herein by reference as if set out verbatim.

Assignor and the Individual each warrants that, to Assignor's and the Individual's knowledge, each of the agreements described above is valid and existing according to the respective terms and conditions of each and that each is in full force and effect. Further, Assignor is not and to Assignor's knowledge, no party is in default in any material respect in any of the agreements. All of such agreements are current. None of the agreements has been amended or modified, except as noted, and there are no agreements relating to a modification, except as set forth in the copy(ies) of the agreement(s) attached hereto. Assignor and the Individual each warrants that Assignor has full right, power and interest to make this Assignment. This Assignment shall be effective on, and the payments and other charges payable under each of the agreements shall be prorated for any partial month from the date hereof forward.

EXECUTED this August 21, 2009.

Assignor:
Integrated Partners, Inc.

By: _____

John P. Barnett, President

The Individual:

_____

John P. Barnett

*ASSIGNMENT AND ASSUMPTION AGREEMENT - PAGE 1*

## ASSUMPTION

Assignee and the Guarantor each expressly agrees that from and after the date of this Assignment Assignee will assume and faithfully perform all obligations and covenants to be performed by Assignor under all of the assumed agreements as referenced above, on the days and at the times and in the manner specified in such agreements and will indemnify, hold harmless and defend Assignor from any claims, damages or liabilities arising out of Assignee's performance under such agreements. Assignee assumes all responsibility for determining whether or not any consent is necessary to the assignment and assumption as herein undertaken and agreed.

EXECUTED this August 21, 2009, by Assignee's duly authorized Officer.

**Assignee:**
The Burks Group, Inc.

By: _____

Brian Burks, President

**The Guarantor:**

_____

Brian Burks

# PURCHASER'S STATEMENT

DATE: August 21, 2009                          NO: 287759.001
SALE FROM: Integrated Partners, Inc.           TO: The Burks Group, Inc.
BUSINESS/PROPERTY: Integrated Partners         PURCHASE PRICE: $ 750,000.00

## PLUS: CHARGES

| | |
|---|---|
| ½ Filing fees to Secretary of State | $ 25.00 |
| ½ Filing fees to County Clerk | $ 12.50 |
| Loan charges and fees due to | $ |
| Loan transfer fee or assumption fee | $ |
| Fees to _____ Title Company | $ |
| Title Policy: Owner ___ Mortgagee ___ Binder ___ | $ |
| ½ Copying, Postage and Telephone Calls | $ 35.00 |
| Tax certificates: State and County | $ |
| City and School | $ |
| Other | $ |
| SBA Guaranty Fee to | $ |
| SBA Packaging Fee to | $ |
| ½ Attorney's fees for preparation of papers to John C. Willems, III | $ 2,761.25 |
| ½ Escrow Fees | $ |
| Hazard insurance premium to | $ |
| Tax and insurance escrowed with | $ |

|  |  |
|---|---|
| ___ mos. tax deposit @ ___ | per mo. ___ |
| ___ mos. hazard insurance @ ___ | per mo. ___ |
| ___ mos. flood insurance @ ___ | per mo. ___ |
| ___ mos. mortgage insurance @ ___ | per mo. ___ |

| | |
|---|---|
| Broker's fees to | $ |
| Proration of hazard insurance from ___ to ___ | $ *POC |
| Proration of flood insurance from ___ to ___ | $ |
| Wire transfer fees | $ 20.00 |
| Tax proration from ___ to ___ | $ |
| Utilities and Telephone | $ *POC |
| Escrowed accounts with lender purchased from Seller | $ |
| ½ UCC Search | $ 150.00 |

**TOTAL CHARGES**     $ 3,003.75
**GROSS AMOUNT DUE BY PURCHASER**     $753,003.75

## LESS: CREDITS

| | |
|---|---|
| Down payment or earnest money paid to | $ |
| Loan from | $100,000.00 |
| Escrowed Sums | $ |
| Interest proration from ___ to ___ | $ |
| Tax proration from January 1, 2009 to August 21, 2009 (233 days x $.45 per day) | $ 104.85 |
| Rent proration from ___ to ___ | $ *POC |
| Other Credit | $ |

*POC - Paid or prorated outside of closing

**35,000.00**

**TOTAL CREDITS**     $ 100,104.85

**BALANCE DUE BY/TO PURCHASER**     $ 652,898.90

Purchaser understands the Closing or Escrow Agent has assembled this information representing the transaction from the best information available from other sources and cannot guarantee the accuracy thereof. Any real estate agent or lender involved may be furnished a copy of this Statement.

Purchaser understands that tax and insurance prorations and reserves were based on figures for the preceding year or supplied by others or estimates for current year, and in the event of any change for current year, all necessary adjustments must be made between Purchaser and Seller direct.

The undersigned hereby authorizes John C. Willems, III or his appointed agent to make expenditures and disbursements shown above and approves same for payment. The undersigned also acknowledges receipt of Loan funds, if applicable, in amount shown above and a receipt of a copy of this Statement.

Purchaser: The Burks Group, Inc.

By: _____

_____
Closing or Escrow Agent

Brian Burks, President
Address: 3173 Williamsburg, Port Neches, Texas 77651

Blue Cross & Blue Sheild

1-22-2010

Acct# 1-0893068326-0201-5

Do to other insurance coverage I would like for Brian's effective date to be 2-1-2010.

Brandi Burks



# Loan Star
INFORMATION
SERVICES

# County/Nationwide Search Results

| | |
|---|---|
| **Completed on:** | 8/20/2009 |
| **Debtor:** | **INTEGRATED PARTNERS INC** |
| **Jurisdiction:** | Dallas County Texas |
| **Through Date:** | 08/06/2006 |
| **Indexes Searched:** | UCC, state TL, federal TL. judgments. fixtures |
| **Results:** | Nothing found |

| **Filing Number** | **Filing Date** | **Filing Type** | **Party** |
|---|---|---|---|
| | | | |

**Comments:**

Because we cannot independently verify the accuracy of the public information maintained by the responsible government agency or other sources of the attached data, we make no guarantees, representation, or warranties as to the accuracy or completeness of this report. We cannot and do not accept any liability for errors or omissions.

PO Box 2072 Austin TX 78768-2072
Phone (866) 894-8300 * Fax (866) 894-8318

# TAB 8

## EXHIBIT "H"

## CONTRACTS

3 customer contracts with

Hoya Vision Care

Legends 4.0 Optical Lab

Southwest Lens Optical Lab

# TAB 9

# COVENANT NOT TO COMPETE

This Covenant Not to Compete (hereinafter called the "Agreement") is made and given by Integrated Partners, Inc., 1225 Lausanne Avenue, Dallas, Texas 75208, (hereinafter called the "Seller") and John P. Barnett, individually, (the "Individual") for the purposes and consideration hereinafter expressed.

WHEREAS on even date herewith the Seller has sold certain assets (hereinafter called the "Assets") of that on-going business owned by Seller and operated under the trade name "Integrated Partners" located at 1508 East Belt Line Road, Suite 205, Carrollton, Texas 75006 (hereinafter called the "Business") to The Burks Group, Inc., 3173 Williamsburg, Port Neches, Texas 77651 (hereinafter called the "Buyer"); and

WHEREAS, the Seller agreed that Seller and the Individual, jointly and severally, would make a binding covenant not to compete with the Buyer as one of the terms and conditions of the sale of the Business, without which, Buyer never would have purchased the Assets of Seller.

NOW, THEREFORE, Seller and the Individual, jointly and severally covenant and agree that they will not, either directly or indirectly within the State of Texas (the "Market Area"), for a period of three (3) years commencing on even date with this Agreement and ending three (3) years hence, do or engage in any of the following acts:

A. Within the Market Area for the time period specified:

(1) Engage in the business of owning (except as the holder of not more than five percent of the stock of any publicly traded corporation), selling and/or operating a business that is a courier or "hot shot" business as a sole proprietor, stockholder, consignor, advisor, consultant, financier, in partnership with others or otherwise.

(2) Be employed by any person, venture, partnership or other entity and render Seller's and/or the Individual's services in a business that is a courier

or "hot shot" business for Seller's and/or the Individual's profit or the profit of any one else within the proscribed market area.

B.    Within the time period specified:

(1)    Employ, or interfere with the employment of any of the employees of Buyer, whether now employed or hereafter employed.

(2)    Directly or indirectly, jointly or severally, either as principal, agent, employee, employer, stockholder, co-partner, or in any other individual or representative capacity whatsoever induce, solicit or attempt to induce or solicit any existing or future client or customer of Buyer to terminate its relationship with the Buyer either for Seller's own benefit or for the benefit of any other person, firm, or corporation competitive with that of the Buyer;

(3)    Directly or indirectly request or advise any present or future merchandise resource, supply resource, or service resource of the Buyer to withdraw, curtail, or cancel the furnishing or sales of merchandise, supplies, or services to the Buyer; or,

(4)    Directly or indirectly induce or attempt to influence any present or future employee or agent of the Buyer (including sales persons whether or not they are independent contractors, if any) to terminate employment with the Buyer.

The Seller and the Individual further agree that in the event this Agreement is successfully enforced by any court of competent jurisdiction in favor of the Buyer and against the Seller and/or the Individual because of Seller's and/or the Individual's breach thereof, the Buyer shall be entitled to recover Buyer's reasonable attorney's fees and all other costs and expenses in addition to any other relief granted.

The Seller and the Individual understand and agree that the nature of the business in which the Buyer is engaged and in which the Buyer may be engaged during the existence of this agreement make it essential for the protection of the Buyer that this agreement be extended to include the defined market area. The Seller and the Individual expressly agree that the competitive acts restricted, the time and the area of the restriction herein granted are reasonable.

For the enforcement of any of the provisions of this Agreement, the Buyer shall have the rights to specific performance and injunctive relief in the broadest sense necessary to effect the protection and rights which Buyer has acquired under this Agreement. Further that the Seller's and/or the Individual's failure to perform any of the promises set forth herein will cause the Buyer to sustain loss and damage which will be difficult to ascertain and measure, and for which the Buyer will have no adequate remedy at law. It is, therefore, reasonable and necessary that the Buyer be accorded the equitable remedies of specific performance and injunctive relief.

It is the intent of the parties that the provisions contained in this Agreement shall, to the fullest extent permissible under law and public policy, be reasonable and be enforced by the courts of each state and jurisdiction in which enforcement is sought and that the unenforceability (or the modification necessary to conform with such law and public policy) of any part of this Agreement shall not be deemed to render unenforceable any other part of this Agreement. Accordingly, if any part of this Agreement shall be adjudicated to be invalid or unenforceable in any action or proceeding including Seller, Seller's successors or assigns, and/or the Individual, the Individual's heirs, executors, administrators, successors and assigns, and the Buyer or Buyer's heirs, executors, administrators, successors or assigns, whether in its entirety or except as modified as to duration, territory, accounts, employees, or otherwise, then such part shall be deemed deleted or amended, as the case may be, in order to render the remainder of this Agreement both valid and enforceable, in accordance with the spirit and underlying intent of this Agreement. The parties hereby request the trier(s) of fact in any proceeding in which they are involved, to amend or delete provisions of this Agreement in accordance with the spirit and underlying intent of this Agreement as

is deemed necessary by such trier(s) of fact. Any such deletion or amendment shall apply only where the Court rendering the same has jurisdiction.

The Seller and the Individual hereby specifically acknowledge and agree that the time period restricting competition as provided for in this Agreement shall be tolled during the time period of any breach of this Agreement by Seller and/or the Individual.

EXECUTED August 21st, 2009.

SELLER:
Integrated Partners, Inc.

By: _____
John P. Barnett, President

THE INDIVIDUAL:

_____
John P. Barnett

BEFORE ME, the undersigned authority, on this day personally appeared John P. Barnett known to me to be the President of Integrated Partners, Inc. whose name is subscribed to the foregoing instrument, and acknowledged to me that such President executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this August 21st, 2009.


John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

_____
Notary Public, State of Texas

BEFORE ME, the undersigned authority, on this day personally appeared John P. Barnett known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he/she executed the same in the capacity and for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this August 21st, 2009.

John C Willems
Notary Public, State of Texas
My Commission Expires:
March 30, 2008

_____
Notary Public, State of Texas